United States Court of Appeals,

Eleventh Circuit.

No. 94-6668.

K. Carl LITTLE, Plaintiff-Appellant,

v.

Debbie BRELAND, Mobile Press Register, Inc., Defendants-Appellees,

Robert O. Bostwick, Jr., Mobile Convention and Visitor's Corporation, Defendants,

AmSouth Bank N.A., Commonwealth National Bank, Gulf Federal Bank, Garnishee.

Sept. 5, 1996.

Appeal from the United States District Court for the Southern District of Alabama. (No. 92-0820-CB-C), Charles R. Butler, Jr., Chief Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and FARRIS[*], Senior Circuit Judge.

FARRIS, Senior Circuit Judge:

K. Carl Little appeals the district court's holding that his resignation as president of the Mobile Convention & Visitors Corporation was a matter of public controversy thereby making Little a limited purpose public figure. He contends that the district court erred in instructing the jury that he must prove the Mobile Press Register acted with actual malice to establish liability. We AFFIRM.

Little sued The Mobile Press Register, Inc., reporter Debbie Breland, The Mobile Convention & Visitors Corporation, and interim president Bobby Bostwick for defamation. The Mobile Convention &

[*]Honorable Jerome Farris, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Visitors Corporation, a non-profit corporation created to provide sales and marketing services and to attract conventions to Mobile, hired Little as its president on April 27, 1992. The suit involves comments made by Bostwick and reported by Breland in an article appearing in the *Press-Register* on May 20, 1992. The article reported Little's firing by the Mobile Convention & Visitors Corporation for alleged sexual misconduct. The district court held that Little was a limited purpose public figure and was required to prove actual malice to prevail on his defamation claim. After a jury trial, Little prevailed against the Mobile Convention & Visitors Corporation and Bostwick but lost against the Mobile Press Register and Breland.

### DISCUSSION

Plaintiffs in defamation cases can be characterized as either: 1) public officials or public figures, 2) limited purpose public figures, or 3) private individuals. The Supreme Court has struck a "balance between the needs of the press and the individual's claim for wrongful injury" by establishing different tests for different defamation plaintiffs. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 343, 94 S.Ct. 2997, 3008-09, 41 L.Ed.2d 789 (1974). A limited purpose public figure is "an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351, 94 S.Ct. at 3013. Public figures "must prove that the defendant acted with actual malice to establish liability" when the "defamatory material involves issues of legitimate public concern." *Silvester v. American Broadcasting*

*Co., Inc.* 839 F.2d 1491, 1493 (11th Cir.1988). To show that the *Press-Register* acted with "actual malice" by publishing defamatory material, Little must show that they acted "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

In *Silvester,* we adopted the three part test set forth in *Waldbaum v. Fairchild Publications, Inc.* 627 F.2d 1287 (D.C.Cir.1980), to determine if the plaintiff is a limited purpose public figure. Under this analysis, we must "(1) isolate the public controversy, (2) examine the plaintiff's involvement in the controversy, and (3) determine whether the alleged defamation [was] germane to the plaintiff's participation in the controversy." *Silvester,* 839 F.2d at 1494 (*citing Waldbaum* ).

I. THE PUBLIC CONTROVERSY

Little argues that the controversy surrounding his reasons for leaving the Mobile Convention & Visitors Corporation was not a "public controversy," but merely "newsworthy." *See Silvester,* 839 F.2d at 1494 ("[A] public controversy must be more than merely newsworthy."). If the controversy "will affect people who do not directly participate in it, the controversy is more than merely newsworthy and is of legitimate public concern." *Id.* at 1495. "In short, ... [i]f the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Id.* The public controversy must have preexisted the alleged defamation. *Id.*

The record demonstrates that there was a preexisting public

controversy surrounding both:  1) the leadership of the Mobile Convention & Visitors Corporation generally, and 2) Little's sudden unexplained departure specifically.  The decision to build the $60 million convention center had been the subject of extensive public debate.  The $1.37 million contract between the City of Mobile and the Mobile Convention & Visitors Corporation to provide sales and marketing services and to attract conventions to Mobile was a matter public controversy.

The problem with leadership of the Mobile Convention & Visitors Corporation was a preexisting public controversy as well. The previous president had been forced out five months earlier, receiving "a good deal of coverage" in the local media.  "To determine whether a controversy indeed existed ... [t]he court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment."  *Waldbaum,* 627 F.2d at 1297.  Little's hiring was covered by the local media.  He attended a Media Appreciation Night on May 7.  Little was described as "the best person possible for the job" in a press release.  His plans for the Mobile Convention & Visitors Corporation and reactions to Mobile and the Convention Center were quoted extensively in the local media.

On May 15, Mobile Convention & Visitors Corporation officials issued a press release announcing that Little withdrew his acceptance of the presidency. On May 16, the  *Press-Register* published a front-page story on Little's departure entitled "Little Has "Change of Heart'."  Before the allegedly defamatory article

was published, a local television news anchor noted that "[t]his latest development [Little's departure] raises new concerns about the MCVC's leadership and its future." The television reporter also noted: "The question is, was there something so wrong with Mobile or the MCVC that Little would choose unemployment over the high-paying convention job here?"

On May 19, two reporters asked Mobile Convention & Visitors Corporation officials about rumors that Little had been forced to resign because of sexual misconduct. Several people spoke to Breland about these rumors and she received an anonymous letter stating that the "Change of Heart" story was incorrect. Little's sudden departure from the Mobile Convention & Visitors Corporation was a public controversy "of legitimate public concern."

Little contends that his resignation was "of no concern to anyone other than himself" and had no ramifications for nonparticipants. This is incorrect. The leadership of the Mobile Convention & Visitors Corporation and the success of the $60 million convention center has "foreseeable and substantial ramifications" for the entire city of Mobile. The success or failure of such an expensive endeavor will have a substantial impact on the City of Mobile's tax base.

II. LITTLE'S INVOLVEMENT IN THE CONTROVERSY

The second prong of the analysis "addresses the extent to which the plaintiffs are involved in the public controversy." *Silvester,* 839 F.2d at 1496. Little either "(1) must purposely [try] to influence the outcome of the public controversy, or (2) could realistically have been expected, because of his position in

the controversy, to have an impact on its resolution." *Id.* Even if Little did not "voluntarily put [himself] in a position to influence the outcome of the controversy," he was "caught up in the controversy against his will, [and] assume[d] a prominent position in its outcome." *Id.* Little's choice to assume the position of leadership at the Mobile Convention & Visitors Corporation, an organization involving public scrutiny, shows a voluntary decision to place himself in a situation where there was a likelihood of public controversy. Little was "participating in activities whose success depends in large part on publicity." *Brewer v. Memphis Publishing Co.,* 626 F.2d 1238, 1255 (5th Cir.1980). Little voluntarily accepted a taxpayer-supported job to market the $60 million convention center and attract visitors to Mobile. His hiring, performance, and firing would all be the subject of public concern and debate. Little sought out media attention at a press conference and was the subject of four newspaper articles and eight television news stories prior to the article in question. Little was "intimately involved in the public controversy." *Silvester,* 839 F.2d at 1496.

## CONCLUSION

The district court did not err in determining that Little was a limited purpose public figure for purposes of his leadership of the Mobile Convention & Visitors Corporation as well as the controversy surrounding his sudden departure as president of the organization.[1] An "actual malice" jury instruction was properly

---

[1]The Mobile Press Register also argues that the judgment should be affirmed because: (1) Little has discharged the Press Register and Breland by satisfying the judgment against the MCVC

given.

    AFFIRMED.

---

and Bostwick, and (2) Little cannot recover additional damages from the Press Register or Breland after receiving a settlement in an amount more than his compensatory damages.  Since the district court was correct in determining that Little was a limited purpose public figure, we do not reach either of these arguments.