1998-NMSC-001

953 P.2d 277

David DEVANEY, Plaintiff–Petitioner,

v.

THRIFTWAY MARKETING CORPORA-
TION, Jerry Clayton, and R.J. Dal-
ley, Defendants–Respondents.

No. 23581.

Supreme Court of New Mexico.

Dec. 22, 1997.

Mettler & LeCuyer, P.C., Earl Mettler, Albuquerque, for Plaintiff–Petitioner.

Benson & Associates, Robert D. Benson, Farmington, for Defendants–Respondents.

## OPINION

MINZNER, Justice.

(1) Plaintiff–Petitioner David DeVaney brought a tort action seeking damages for abuse of process and malicious prosecution. The trial court granted Defendants–Respondents Thriftway Marketing Corporation and its officers (collectively, "Thriftway") summary judgment, and the Court of Appeals affirmed. We granted certiorari to revisit and clarify the elements required for the two torts on which DeVaney relies. Specifically, we address two issues: (1) whether, in an abuse of process claim, filing a complaint for an improper purpose may serve as the requisite improper act, and (2) whether the "special injury" requirement for a malicious prosecution claim may be satisfied by a showing that a plaintiff is no longer able to work in his or her chosen occupation. We conclude that the torts of malicious prosecution and abuse of process should be restated as a single tort known as malicious abuse of pro-

cess. Also, we abolish the "special injury" requirement for a malicious abuse of process claim, and therefore, we need not decide whether DeVaney's inability to secure employment fits within the realm of "special injury." Because we believe genuine issues of material fact preclude judgment as a matter of law, we reverse and remand.

## I. FACTS AND PROCEDURE

(2) Thriftway owns and operates several convenience stores within the boundaries of the Navajo Nation, in Farmington, and in surrounding communities. DeVaney was formerly a manager at a Thriftway store located within the Navajo Nation. An article appeared in the September 19, 1991, edition of the Navajo Times, a newspaper circulated and read throughout the Navajo Nation and surrounding communities including Farmington and Gallup. The article stated that De-Vaney made the following negative comments about Thriftway: "I don't think the company [Thriftway] really cares about the Navajo people even though they have a lot of stores here on the reservation," and, "They [Thriftway] had cut their prices so much in Farmington that they weren't making any money so they had to increase the price of the gasoline on the reservation to bring in the profits."

(3) The article also contained comments to the effect that Thriftway practiced a course of conduct in which store managers were fired after only a year or two of service without regard for the wishes of the communities in which they worked and that Thriftway was insensitive to the Navajo culture both by hiring employees without regard for their ability to understand Navajo culture and by failing to provide any training on Navajo culture after they were hired.

(4) Thereafter, Thriftway sued DeVaney for defamation and interference with business relations, alleging that it was damaged by DeVaney's comments because they caused public contempt for the company. Specifically, Thriftway believed that its then-pending negotiations with the Navajo Nation to complete a business transaction failed because of the negative comments DeVaney made publicly.

(5) In the action initiated by Thriftway, DeVaney moved to dismiss both counts. De-Vaney asserts that, at a hearing, the judge indicated that he would dismiss the count for intentional interference with business relations but would not dismiss the count for defamation. Thriftway then filed a motion for default judgment before the expiration of the time limitation on the filing of DeVaney's answer. The court did not grant Thriftway's motion. Additionally, DeVaney alleges that one of Thriftway's employees failed to appear for a scheduled out-of-town deposition. Thriftway also resisted requests for discovery of relevant information within the exclusive control of Thriftway. Specifically, Thriftway refused to produce documents containing information about Thriftway's gas prices within the Navajo Nation compared with those in Farmington and other communities and documents pertaining to Thriftway's personnel practices in relation to its managers. When the court compelled disclosure of the necessary information, Thriftway dismissed its suit.

(6) In the present complaint against Thriftway for malicious prosecution and abuse of process, DeVaney alleged that Thriftway "filed the lawsuit without probable cause or reasonable grounds to believe that it had been slandered, libelled or defamed, without probable cause or reasonable grounds to believe that any of its contractual or business relations had been interfered with, and without probable cause or reasonable grounds to believe that it had been damaged by any act of [DeVaney]." DeVaney alleged that Thriftway's suit was filed in order to silence his criticism of Thriftway's business practices and to obtain a retraction of the criticisms. He contends on appeal that these motives provide a basis for a claim of malicious prosecution as well as abuse of process. DeVaney highlighted Thriftway's actions of prematurely filing a default motion, abusing discovery and dismissing the suit in response to an order compelling discovery, as instances of improper conduct during its suit against him.

(7) Thriftway moved for summary judgment, seeking to show that DeVaney could

not establish one or more of the essential elements of the torts on which he based his complaint. The trial court ruled in favor of Thriftway on both counts. The district court concluded that DeVaney's statements were actionable. The court found that Thriftway "possessed reasonable and probable cause to initiate and prosecute the prior lawsuit." The court also found that it "possessed no ulterior motive or improper purpose in instituting or prosecuting that action." The district court granted Thriftway's motion for summary judgment and dismissed Devaney's complaint. The Court of Appeals affirmed dismissal of both claims, but for other reasons. On the abuse of process claim, the Court of Appeals assumed existence of an improper motive, but held that a subsequent improper act "amount[ing] to extortion," was required in addition to filing the complaint. On the malicious prosecution claim, the Court of Appeals did not decide whether Thriftway had reasonable grounds to sue DeVaney, but held that DeVaney failed to prove "special damages", a required element for the tort.

(8) We granted certiorari in order to reexamine the elements of the two torts in light of *Richardson v. Rutherford,* 109 N.M. 495, 787 P.2d 414 (1990). In *Richardson,* we explained that, "[w]hile a subsequent act may suffice to prove an abuse of process which was appropriate when issued, it is not an essential element." *Id.* at 502, 787 P.2d at 421. We questioned the necessity of the special damages requirement in an action for abuse of process. *See id.* at 501 n. 3, 787 P.2d at 420 n. 3. Subsequently, our Court of Appeals interpreted Richardson to mean that "the improper act required for an abuse of process claim could be the filing of the complaint itself and that an improper subsequent act was not required." *Westland Dev. Co. v. Romero,* 117 N.M. 292, 294, 871 P.2d 388, 390 (Ct.App.1994). In the present action, the Court of Appeals construed *Richardson* and *Westland* as allowing "for the possibility that under certain, very limited and special circumstances the filing of suit could be enough." *DeVaney v. Thriftway,* NMCA 16,-842, slip op. at 3 (March 25, 1996). We now reverse.

## II. STANDARD OF REVIEW

■ (9) "In reviewing a grant of summary judgment, we must determine whether the moving party has demonstrated that there is no genuine issue of material fact and is therefore entitled to judgment as a matter of law." *Gonzales v, Allstate Ins., Co.,* 1996 NMSC 041, 122 N.M. 137, 139, 921 P.2d 944, 946. When a defendant seeks summary judgment against a plaintiff, the defendant might attempt to negate one of the essential elements of the plaintiff's claim. *Blauwkamp v. University of New Mexico Hosp.,* 114 N.M. 228, 231–32, 836 P.2d 1249, 1252–53 (Ct.App.1992). In an action for abuse of process, for example, the Court of Appeals has sustained summary judgment on the basis that a plaintiff was not able to show an act in "the use of process other than such as would be proper in the regular prosecution of the charge." *Burgett v. Apprill,* 100 N.M. 72, 75, 665 P.2d 1163, 1166 (Ct.App.1983) (quoting *Farmers Gin Co. v. Ward,* 73 N.M. 405, 407, 389 P.2d 9, 11 (1964)). In an action for malicious prosecution, the Court of Appeals has sustained summary judgment on the basis that the plaintiff had not shown a lack of probable cause for initiating criminal proceedings. *Somerstein v. Gutierrez,* 85 N.M. 130, 132, 509 P.2d 897, 899 (Ct.App. 1973).

(10) Thriftway moved for summary judgment on various grounds. Thriftway argued that DeVaney could not establish that it lacked probable cause in suing him or that he had suffered special damages. Thus, Thriftway argued, DeVaney could not establish essential elements of the claim for malicious prosecution. Thriftway also contended that DeVaney could not establish it proceeded for an ulterior motive or committed an act that was not a proper part of the regular pursuit of its claim. Thus, it contended he could not establish essential elements of the claim for abuse of process. In order to evaluate the soundness of Thriftway's motion, we first consider the elements of the two torts as they have developed in New Mexico.

(11) In New Mexico, abuse of process has required: (1) the existence of an ulterior motive; (2) an act using process other than

that which would be proper in the regular prosecution of the charge; and (3) damages. *Ruiz v. Varan,* 110 N.M. 478, 480, 797 P.2d 267, 269 (1990). Abuse of process has required that the defendant's primary motive was to accomplish an illegitimate end by an overt act designed to effect such end. *Richardson,* 109 N.M. at 502, 787 P.2d at 421. By contrast, in order to maintain an action for the malicious institution of a civil proceeding, a plaintiff has had the burden of establishing: (1) the institution of civil proceedings by the defendant; (2) malice; (3) a lack of probable cause; (4) termination of such proceedings in plaintiff's favor; and (5) damages. *See generally* 4E Louis R. Frumer & Melvin I. Friedman, *Personal Injury: Actions, Defenses, Damages,* Malicious Prosecution and Abuse of Process § 2.01[3] (1997) [hereinafter Frumer]; Restatement (Second) of Torts §§ 674(e), 681 (1977) (characterizing civil counterpart to malicious prosecution as wrongful civil proceedings). New Mexico courts traditionally have required proof of special damages in order to maintain a claim for malicious prosecution. *E.g., Johnson v. Walker–Smith Co.,* 47 N.M. 310, 312, 142 P.2d 546, 547 (1943).

(12) For the reasons that follow, we conclude that the torts of abuse of process and malicious prosecution should no longer be separate causes of action. We therefore depart from the tradition requiring special damages and otherwise restate the elements of these two torts as a single cause of action.

### III. ABUSE OF PROCESS AND MALICIOUS PROSECUTION COMPARED

(13) Many courts and litigants have experienced a great deal of difficulty in distinguishing a claim of abuse of process from one of malicious prosecution because these two torts are closely related. *See, e.g., Simon v. Navon,* 71 F.3d 9, 15 (1st Cir.1995); *Westland,* 117 N.M. at 293, 871 P.2d at 389. Originally, the tort of abuse of process was created in order to alleviate the harsh procedural requirements of malicious prosecution. *Yost v. Torok,* 256 Ga. 92, 344 S.E.2d 414, 415 (1986) ("The tort of malicious abuse arose as a modification of the tort of malicious use, to

provide relief where the procedural requirements of malicious use could not be met."); *see Clark Equip. Co. v. Wheat,* 92 Cal.App.3d 503, 154 Cal.Rptr. 874, 885 (1979) ("The tort [of abuse of process] evolved as a 'catch-all' category to cover improper uses of the judicial machinery that did not fit within the earlier established *but narrowly circumscribed,* action for malicious prosecution."). Steadily, however, these two torts have become less distinguishable.

(14) We believe the confusion between these two separate torts arises from a commonality in their purpose and their elements. Both torts are designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 119, at 870 (5th ed. 1984) [hereinafter Prosser & Keeton] ("The interest in freedom from unjustifiable litigation is protected by actions for malicious prosecution and abuse of process."). Further, both torts represent an attempt to strike a balance between the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts. *See. e.g., Protect Our Mountain Env't. Inc. v. District Court,* 677 P.2d 1361, 1368 (Colo. 1984) (discussing abuse of process); *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal.3d 1157, 232 Cal.Rptr. 567, 574, 728 P.2d 1202, 1209 (1986) (discussing malicious prosecution).

(15) Additionally, the elements of both torts are similar. Abuse of process requires an improper act, a primary improper motive, and damages. Malicious prosecution requires initiation of proceedings, a lack of probable cause, favorable termination, malice, and damages. While these elements may appear and even sometimes, on particular facts,' actually may be distinguishable, they serve similar interests. The requirements of improper purpose for abuse of process and of malice for malicious prosecution

are substantially similar. *See Aranson v. Schroeder*, 140 N.H. 359, 671 A.2d 1023, 1027 (1996) (stating that "malicious prosecution and abuse of process 'have the common element of an improper purpose in the use of legal process, and there are many cases in which they overlap and either will lie' ") (quoting Prosser & Keeton, *supra*, § 121, at 898); *see also Prewitt v. Sexton*, 777 S.W.2d 891, 894 (Ky.1989) ("What is often loosely labeled proof of 'malice' is more specifically defined in the Restatement as bringing the prior lawsuit 'primarily for a purpose other than that of securing the proper adjudication of the claim.' ") (quoting Restatement (Second) of Torts § 676). The institution of proceedings without probable cause, an element of malicious prosecution, can be characterized as an act not proper in the regular course of proceedings, an element of abuse of process. Also, the requirement of a favorable termination represents a procedural and evidentiary safeguard with respect to a showing of lack of probable cause. *See De-Laurentis v. City of New Haven*, 220 Conn. 225, 597 A.2d 807, 820 (1991) (stating that a favorable termination is "relevant to the issue of probable cause"); *Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill.2d 267, 226 Ill.Dec. 604, 610, 685 N.E.2d 1347, 1353 (1997) ("[A] favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause."). As this similarity of elements shows, malicious prosecution probably is better understood as a specific application of the more general tort of abuse of process.

(16) Finally, two recent developments have further obscured the differences between these two torts. First, the "American Rule" rejection of the requirement of special damages, which we adopt today, removes any potential distinction between the two torts under the element of damages. Second, this Court has allowed a claim for abuse of process without requiring an act subsequent to the filing of a complaint, *Richardson*, 109 N.M. at 502, 787 P.2d at 421, making abuse of process even less distinguishable from malicious prosecution. *Westland*, 117 N.M. at 294, 871 P.2d at 390 (stating that *Richardson* "arguably might be read as blurring the line

between malicious prosecution and abuse of process").

## IV. THE TORT OF MALICIOUS ABUSE OF PROCESS

■ (17) Based on these similarities, we believe that there is no longer a principled reason for characterizing these two forms of misuse of process as separate causes of action. *See Yost*, 344 S.E.2d at 417 (reformulating malicious use of process and malicious abuse of process into a single tort of abusive litigation); 1 Fowler V. Harper, et al., *The Law of Torts* § 4.9, at 497–98 (2nd ed. 1986) [hereinafter Harper] ("Both actions deal with the same problem—the perversion of the legal system. The problem has been treated as two somewhat separate torts mainly for reasons of convenience, and not because it is at all important in principle that the actions be kept distinct from each other."); *see also Simon*, 71 F.3d at 15 (stating that there is an "overlap between malicious prosecution and abuse of process"). As a result, we conclude that these torts should be restated as a single cause of action, which shall be known as "malicious abuse of process," and which shall be defined by the following elements: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. In short, there must be both a misuse of the power of the judiciary by a litigant and a malicious motive.

### A. Initiation of Proceedings and the Overt Act Requirement

(18) With respect to the requirement of an improper act, DeVaney suggests that *Richardson* stands for the proposition that a complaint alone filed for an improper purpose is sufficient to warrant tort liability, *see Richardson*, 109 N.M. at 502, 787 P.2d at 421 ("The initial use of process itself may constitute the required overt act under the facts."). We note that this view would render obsolete the important requirement of a lack of probable cause under the former tort of malicious

prosecution. *Oren Royal Oaks,* 232 Cal. Rptr. at 575, 728 P.2d at 1209–10; *see also Westland,* 117 N.M. at 294, 871 P.2d at 390 ("[W]e do not believe our Supreme Court intended to do away with the distinction between abuse of process and malicious prosecution."). While we believe malicious prosecution and abuse of process should no longer be separate causes of action, we recognize that many of the traditional elements of both torts continue to serve important purposes. Specifically, the traditional elements of a lack of probable cause under the former tort of malicious prosecution and of an act not proper in the regular prosecution of a claim under the former tort of abuse of process serve to protect the important interest of access to the courts, thereby preventing any chilling effect on the legitimate use of process. *Oren Royal Oaks,* 232 Cal.Rptr. at 575, 728 P.2d at 1209–10 (stating that "the lack-of-probable-cause requirement in the malicious prosecution tort plays a crucial role in protecting the right to seek judicial relief" and in preventing an "improper 'chilling' of the right to seek redress in court."); *see* Harper, *supra,* § 4.9, at 498 ("[S]tandardized barriers to the malicious prosecution action have been erected in the interest of assuring that it is available only in cases of clear perversion.").

### 1. Access to the Courts

 (19) Meaningful access to the courts is a right of fundamental importance in our system of justice. "The right of access to the courts is one aspect of the right to petition the government for redress of grievances, as guaranteed by the First Amendment to the U.S. Constitution, and also is protected by the provisions protecting due process of law, as set out in the Fourteenth

Amendment to the U.S.Constitution and in Article II, Section 18, of the New Mexico Constitution." *Board of Educ. of Carlsbad Mun. Sch. v. Harrell,* 118 N.M. 470, 480, 882 P.2d 511, 521 (1994); *accord Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 696–99, 763 P.2d 1153, 1161–64 (1988); *Jiron v. Mahlab,* 99 N.M. 425, 426, 659 P.2d 311, 312 (1983); *Moongate Water Co. v. State,* 120 N.M. 399, 405, 902 P.2d 554, 560 (Ct.App.1995); *see Nordgren v. Milliken,* 762 F.2d 851, 853–54 (10th Cir.1985) (stating that the right of access to the courts is also protected by the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment). Because of the potential chilling effect on the right of access to the courts, the tort of malicious prosecution is disfavored in the law. *See, e.g., Rashidi v. Albright,* 818 F.Supp. 1354, 1359 (D.Nev.1993), *aff'd mem.,* 39 F.3d 1188 (9th Cir.1994); *Brough v. Foley,* 572 A.2d 63, 66 (R.I.1990) (stating that malicious prosecution is "traditionally disfavored because of the belief that [it] tend[s] to deter the prosecution of crimes and/or chill free access to the courts"); *Chittenden Trust Co. v. Marshall,* 146 Vt. 543, 507 A.2d 965, 969 (1986) ("[C]laims of malicious prosecution are not favored in the law ... because '[t]hey have an undesirable tendency to unduly discourage citizens from seeking redress in the courts.'" (quoting *Anello v. Vinci,* 142 Vt. 583, 458 A.2d 1117, 1120 (1983))). Thus, we must construe the tort of malicious abuse of process narrowly in order to protect the right of access to the courts. *See Wolfgram v. Wells Fargo Bank,* 53 Cal.App.4th 43, 61 Cal.Rptr.2d 694, 703 (review den.) ("[A]ny impairment of the right to petition ... must be narrowly drawn."), *cert. denied,* —— U.S. ——, 118 S.Ct. 347, 139 L.Ed.2d 270 (1997).[1]

1. In fact, the importance of the right to petition, and the potential chilling effect of tort liability, has caused the courts of some states to apply the more stringent requirements of the *Noerr–Pennington* doctrine, *United Mine Workers v. Pennington,* 381 U.S. 657, 669–72, 85 S.Ct. 1585, 1593–94, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 144, 81 S.Ct. 523, 533, 5 L.Ed.2d 464 (1961), to actions for malicious prosecution and abuse of process. *See City of Long Beach v. Bozek,* 31 Cal.3d 527, 183 Cal.Rptr. 86, 88–93, 645 P.2d 137, 138–43 (1982), *vacated,* 459 U.S. 1095, 103 S.Ct. 712, 74 L.Ed.2d 943, *reiterated*

*on independent state constitutional grounds,* 33 Cal.3d 727, 190 Cal.Rptr. 918, 919, 661 P.2d 1072, 1073 (1983) (holding that the right to petition insulates private litigants from retaliatory malicious prosecution actions by the government); *Protect Our Mountain Env't,* 677 P.2d at 1366–69 (abuse of process); *Cove Road Dev. v. Western Cranston Indus. Park Assoc.,* 674 A.2d 1234, 1237 (R.I.1996) (applying the "sham exception" analysis to malicious prosecution actions and stating that "the constitutional protection of the right to petition is no less compelling in the context of common-law tort claims than in the framework of federal antitrust legislation");

## 2. The Misuse of Process

■ (20) With these considerations in mind, we now clarify our holding in *Richardson*. An improper act, or misuse of process, need not occur subsequent to the filing of a complaint and might, in fact, be found in the complaint itself, *see Richardson*, 109 N.M. at 502–03, 787 P.2d at 421–22 (allowing a claim for abuse of process based on a request for excessive damages contained in the complaint, in light of a lack of reasonable investigation into the extent of injury, and based on excessive attachments to the complaint), or even precede the filing of a complaint, *see* Prosser & Keeton, *supra*, § 121, at 898 ("[A] demand for collateral advantage that occurs before the issuance of process may be actionable, so long as process does in fact issue at the defendant's behest, and as a part of the attempted extortion." (footnote omitted)). Nevertheless, the filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive. *Richardson*, 109 N.M. at 502, 787 P.2d at 421 ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions . . . ." (quoting Prosser & Keeton, *supra*, § 121, at 898)); *see Simon*, 71 F.3d at 16 ("Filing of a lawsuit is a 'regular' use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent.").

■ (21) This is the position of the majority of states addressing the issue. *E.g., Laxalt v. McClatchy*, 622 F.Supp. 737, 752 (D.Nev.1985) (citing cases); *Kollodge v. State*, 757 P.2d 1024, 1027 (Alaska 1988); *Oren Royal Oaks*, 232 Cal.Rptr. at 575, 728 P.2d at 1209 ("[T]he mere filing or maintenance of a lawsuit—even for an improper

purpose—is not a proper basis for an abuse of process action. The overwhelming majority of out-of-state precedents have reached the same conclusion." (citations omitted)); *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984) (stating that a complaint is legally incapable of being abused). The requirement of a misuse of process, in addition to the mere initiation of proceedings, serves to prevent a chilling effect on claims well-founded in fact and law and asserted for the legitimate purpose of redressing a grievance. *See Oren Royal Oaks*, 232 Cal.Rptr. at 575, 728 P.2d at 1209. In order to satisfy the misuse of process requirement, then, we conclude that there must be an overt act that is irregular or improper in the normal course of proceedings. There are two independent means of demonstrating a misuse of process.

### a. Lack of Probable Cause

■ (22) We believe the tort of malicious prosecution, as it developed, recognized that the filing of a complaint without probable cause is a form of misuse of process. We conclude that to demonstrate the overt act required in an action for malicious abuse of process, a plaintiff may show the defendant filed an action against that plaintiff without probable cause. For this purpose, we define probable cause as the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, *Business Guides, Inc. v. Chromatic Communications Enter.*, 498 U.S. 533, 549–51, 111 S.Ct. 922, 932–33, 112 L.Ed.2d 1140 (1991) (discussing the investigative standard under Fed. R.Civ.P. 11),[2] that a claim can be established to the satisfaction of a court or jury. Restatement (Second) of Torts § 675; *see also Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 62–63, 113 S.Ct. 1920, 1929, 123 L.Ed.2d 611 (1993). The lack of probable cause must be

*Pound Hill Corp. v. Perl*, 668 A.2d 1260, 1263 (R.I.1996) (abuse of process).

2. We note that we apply a subjective standard under Rule 1–011 NMRA 1997, as opposed to the objective standard under the Federal Rules of Civil Procedure, and focus on "what the attorney or litigant knew and believed at the relevant time." *Rivera v. Brazos Lodge Corp.*, 111 N.M.

670, 675, 808 P.2d 955, 960 (1991). Because of the additional requirement of malice in actions for malicious abuse of process, we see no contradiction between an objective standard in tort, requiring a reasonable pre-filing inquiry, and a subjective standard under our Rules of Civil Procedure.

manifest. *See* Prosser & Keeton, *supra,* § 120, at 893 (stating that "want of probable cause must be 'very clearly proven' or 'very palpable' ") (footnotes omitted).

■ (23) We believe the tort of malicious prosecution has required proof of a favorable termination as a procedural and evidentiary safeguard. We now conclude that favorable termination is not an element of an action for malicious abuse of process but rather that an unfavorable termination has significance in demonstrating the existence of probable cause. An unfavorable termination for the malicious-abuse-of-process plaintiff, meaning some form of recovery for the original-proceeding plaintiff, is "conclusive evidence of the existence of probable cause." *Id.* at 894; Restatement (Second) of Torts § 675 cmt. b.

### i. Counterclaims

■ (24) The requirement of a favorable termination in the action for malicious prosecution has affected the availability of a counterclaim by the defendant in the original proceeding. Many courts have discouraged counterclaims founded on a lack of probable cause in order to avoid jury confusion. *See, e.g., Westland,* 117 N.M. at 294, 871 P.2d at 390. However, the existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law. *Leyser v. Field,* 5 N.M. 356, 362, 23 P. 173, 174 (1890); Restatement (Second) of Torts § 681B. Because we do not recognize favorable termination as an element of a cause of action for malicious abuse of process, we hold that such a claim may be raised by counterclaim. *Cf.* Wash.Rev.Code § 4.24.350(1) (1996) (allowing a counterclaim for malicious prosecution).

### ii. Burden of Proof

■ (25) We recognize that the traditional requirement of a favorable termination served the important function of procedurally safeguarding the right of access to the courts by honest litigants. The absolute defense available to the original-proceeding plaintiff of a favorable termination in the original proceeding is one such safeguard. As a result, we conclude that a malicious-abuse-of-process plaintiff alleging a lack of

probable cause prior to a termination of the underlying claim, for example by counterclaim in the original proceeding, must demonstrate the lack of probable cause by clear and convincing evidence, *see State v. Valdez (In re Valdez),* 88 N.M. 338, 343, 540 P.2d 818, 823 (1975) (requiring clear and convincing evidence in civil commitment proceedings and stating that "[t]he standard of 'clear and convincing' evidence is 'no stranger to the civil law.' " (quoting *Woodby v. Immigration & Naturalization Serv.,* 385 U.S. 276, 285, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966))); *but see Chavez v. Manville Products Corp.,* 108 N.M. 643, 649, 777 P.2d 371, 377 (1989) ("[T]he requirement of clear and convincing proof in civil cases is the exception rather than the rule...."). *Cf. Ellis County State Bank v. Keever,* 888 S.W.2d 790, 792–94 (Tex. 1994) (5–4 decision) (rejecting clear and convincing evidence standard of proof for malicious prosecution, while noting that courts must be satisfied that "positive, clear, and satisfactory" proof exists); *id.* at 799–801 (Hecht, J., concurring in part and dissenting in part) (advocating a "heightened clear-and-convincing standard of evidentiary review" in malicious prosecution actions); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974) (requiring clear and convincing evidence to demonstrate actual malice in defamation actions in order to prevent the chilling of protected speech). "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Sedillo,* 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972).

■ (26) If a plaintiff chooses to delay the assertion of a malicious abuse of process claim until the termination of the underlying proceeding, the plaintiff must, instead, prove a lack of probable cause by a preponderance of the evidence. *See* Restatement (Second) of Torts § 675 cmt. b ("[A] termination of civil proceedings by a competent tribunal adverse to the person initiating them is not evidence that they were brought without probable cause."). The availability of a favorable-termination defense adequately safe-

guards honest litigants so that a higher standard of proof is unnecessary. *See Keever*, 888 S.W.2d at 792–94.

(27) In any event, a malicious-abuse-of-process plaintiff attempting to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim.[3] These principles are intended to help separate the legal issue of probable cause from the facts surrounding termination of the original proceeding.

### b. Procedural Impropriety

■ (28) The second general method of demonstrating a misuse of process is through some irregularity or impropriety suggesting extortion, delay, or harassment, conduct formerly actionable under the tort of abuse of process. Under this method, the act might be a procedural irregularity, *Simon*, 71 F.3d at 15 ("Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment." (citations omitted)); *Richardson*, 109 N.M. at 502–503, 787 P.2d at 421–22, or might be an act that otherwise indicates the wrongful use of proceedings, such as an extortion attempt, Restatement (Second) of Torts § 682 cmt. b ("The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."). *See Farmers Gin Co.*, 73 N.M. at 407–08, 389 P.2d at 11 (listing as forms of abuse of process "excessive execution on a judgment; attachment on property other than that involved in the litigation or in an excessive amount; oppressive conduct in connection with the arrest of a person or the seizure of property, such as illegal detention and conversion of personal property pending suit; extortion of excessive sums of money").

### B. Primary Motive to Accomplish an Illegitimate End

■ (29) Under the requirement of a primary improper motive, it is insufficient

that the malicious-abuse-of-process defendant acted with ill will or spite. Prosser & Keeton, *supra*, § 121, at 897 ("[E]ven a pure spite motive is not sufficient where process is used only to accomplish the *result* for which it was created." (emphasis added)); *id.* § 120, at 894–95 ("[T]he plaintiff in a civil suit is always seeking his own ends."). There must be a purpose to accomplish an illegitimate end. *See* Restatement (Second) of Torts § 676 (recommending liability for one who initiates proceedings "primarily for a purpose other than that of securing the proper adjudication of the claim"); *id.* § 682 (recommending liability for "[o]ne who uses a legal process ... against another primarily to accomplish a purpose for which it is not designed").

(30) The following are typical examples of the improper purposes that could serve as the basis for a malicious abuse of process action: (1) a litigant pursues a claim knowing that it is meritless; (2) a litigant pursues a claim primarily in order to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (3) a litigant misuses the law primarily for the purpose of harassment or delay; or (4) a litigant initiates proceedings primarily for the purpose of inducing settlement in an unrelated proceeding or for some other form of extortion. Restatement (Second) of Torts § 676 cmt. c. While an overt misuse of process, such as a lack of probable cause, or an excessive attachment, may support an inference of an improper purpose, "it may not be inferred from evidence of an improper purpose alone that there was not probable cause," Restatement (Second) of Torts § 669A cmt. b (incorporated by reference in Section 675 cmt. j), or that there was not a proper use of process, and the burden of proving the overt act by independent evidence remains upon the plaintiff. *See Leyser*, 5 N.M. at 362, 23 P. at 174 ("Malice ... may be inferred by the jury from the want of probable cause. But the want of probable cause can not be inferred from any degree of

---

**3.** It is a defense for lack of probable cause that an unreasonable belief in the legal validity of a claim is based on advice of counsel "sought in good faith and given after full disclosure of all

[known or readily knowable] relevant facts." Restatement § 675(b); *accord Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 922 S.W.2d 327, 331–32 (1996).

even expressed malice....."); *Bosler v. Shuck,* 714 P.2d 1231, 1235 (Wyo.1986). The degree to which the process has been misused will determine the strength of the permissible inference of an improper motive.

## C. Damages

(31) Two views have developed in American courts on what a plaintiff needs to prove in order to meet the damage requirement for the tort of malicious prosecution. 4E Frumer, *supra,* Malicious Prosecution and Abuse of Process § 1.03[5]. New Mexico has previously aligned itself with a minority of jurisdictions adhering to the English common law rule which requires a showing of special damages as an element of recovery for malicious prosecution.[4] *Id.* § 1.05[2][c] n. 2. Special damages include an actual interference with the defendant's person or property, or damages suffered beyond those ordinarily resulting from a lawsuit:

> [A]n action will not lie for the prosecution of civil action with malice and without probable cause, where there has been no arrest of the person or seizure of the property of the defendant, or where the defendant has suffered no injuries except those which are the necessary result in all ordinary law suits.

*Johnson,* 47 N.M. at 312, 142 P.2d at 547, *quoted in Hollars v. Southern Pac. Trans. Co.,* 110 N.M. 103, 108, 792 P.2d 1146, 1151 (Ct.App.1989).

(32) DeVaney argues that the special damages requirement is outdated and should be modified or abolished. For the reasons that follow, we believe the requirement serves no useful purpose and therefore should be abolished.

### 1. Background of the Special Injury Requirement

(33) In England, prior to the development of private rights of action for vexatious litigation, the courts established an intricate system of internal sanctions and deterrents. Note, *Groundless Litigation and the Mali-*

*cious Prosecution Debate: A Historical Analysis,* 88 Yale L.J. 1218, 1221–23 (1979) [hereinafter *Historical Analysis* ] (discussing the remedy of *wer* and the amercement system in which a monetary penalty for a false claim was paid to the court). In addition, several statutes were enacted providing for the taxation of litigation expenses against the unsuccessful litigant to be paid to the prevailing party. *Id.* at 1226–27. The subsequent development of private rights of action served to supplement the existing remedies and were, therefore, extraordinary remedies for damages incurred beyond the normal expenses of litigation. *Id.* at 1229. The modern action of malicious prosecution developed out of the action on the case in the nature of conspiracy. *Id.* at 1227–29. "[I]n the areas of possible damage beyond the perimeter of a costs award, the action on the case in the nature of conspiracy evolved into the English Rule for malicious prosecution." *Id.* at 1227. Because the defendant was thought to be adequately compensated under the statutes for other injuries, English courts consistently refused to allow a private action to remedy vexatious litigation without the suffering of an arrest, a seizure of property, or some other special injury. *See Ackerman v. Kaufman,* 41 Ariz. 110, 15 P.2d 966, 967 (1932).

### 2. Evolution of the Tort at American Common Law

(34) Opponents of the English Rule argue that the special injury requirement has been an effective bar to malicious prosecution claims in jurisdictions adhering to the special damage rule. 4E Frumer, *supra,* Malicious Prosecution and Abuse of Process § 1.03[5], at 136. Courts have construed the requirement strictly. Damages such as increased insurance premiums, damage to professional reputation, loss of income during the pendency of the suit, mental suffering caused by the suit, and litigation expenses are considered normal expenses of defending a suit, and not "special injuries." *See id.* at 134–36; *Balthazar v. Dowling,* 65 Ill.App.3d 824, 22

---

4. The issue of special damages in the context of abuse of process has previously not been definitively resolved in New Mexico. *See Richardson,* 109 N.M. at 501 n. 3, 787 P.2d at 420 n. 3

(casting doubt on the application of the special damages requirement in abuse of process actions).

Ill.Dec. 559, 561, 382 N.E.2d 1257, 1259 (1978); *see also Epps v. Vogel*, 454 A.2d 320, 324 (D.C.1982) (loss of income); *Tarver v. Wills*, 174 Ga.App. 550, 330 S.E.2d 896, 898–99 (1985) (increased insurance premiums); *Barnard v. Hartman*, 130 Mich.App. 692, 344 N.W.2d 53, 55 (1983) (damage to professional reputation). In fact, experience has shown that courts have had much difficulty defining clearly what actually constitutes "special injury." "The immense variations in fact patterns which give rise to suits for malicious prosecution make generalization beyond the basic rules difficult, if not pointless." 4E Frumer, *supra*, Malicious Prosecution and Abuse of Process § 1 .03[5], at 137.

(35) Today, the requirement of special damages has been "severely criticized," and "a majority of the courts that have considered the issue ... plac[e] no such limitations on the types of damage necessary in order to establish a tort claim of unjustified initiation of civil litigation." Harper, *supra*, § 4.8, at 475–76 (footnote listing cases omitted); *see also O'Toole v. Franklin*, 279 Or. 513, 569 P.2d 561, 564 (1977) (listing the states which follow the special damages rule and those which do not). It appears that this trend toward the rejection of special damages is continuing. *See Greenberg v. Wolfberg*, 890 P.2d 895, 901 (Okla.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1847, 134 L.Ed.2d 948 (1996); *see also* 42 Pa.Cons.Stat.Ann. § 8351(b) (West 1996). The "American Rule" rejection of special damages is consistent with the Restatement. *See* Restatement (Second) of Torts § 681. Finally, the "American Rule" abrogation of special damages appears to be related to the rule, also known as the "American Rule," *Montoya v. Villa Linda Mall. Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990), requiring parties to bear their own attorney's fees. *See Historical Analysis, supra*, at 1229–31.

## 3. New Mexico Will Follow the Majority Rule

(36) In view of the development of the tort over the course of time, we believe that the special damages limitation no longer serves the purposes of the tort itself, which allows victims of groundless suits to obtain adequate redress. The "right not to be unjustifiably involved in litigation, ... to be free of unwarranted, sometimes vexatious, litigation is the essential interest sought to be protected" by the tort. 4E Frumer, *supra*, Malicious Prosecution and Abuse of Process § 1.01[1], at 6. A litigant should be entitled to have his rights determined without the risk of being sued and having to respond in damages for seeking to enforce his rights. However, should the necessity arise, when a victim of groundless litigation seeks redress, the special damages requirement should not serve as a bar to recovery.

(37) We also believe that the narrow purpose of providing an extraordinary remedy for damages other than costs, for which the special damages requirement was originally developed, is inapplicable in New Mexico. "New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees." *Montoya*, 110 N.M. at 129, 793 P.2d at 259. As a result, a malicious abuse of process plaintiff will not have the benefit of fee-shifting in the underlying action. Even in the limited situations in which fee-shifting is available in the underlying action, *see, e.g., State ex rel. New Mexico State Highway and Transp. Dep't v. Baca*, 120 N.M. 1, 5, 896 P.2d 1148, 1152 (1995) (recognizing the inherent power of courts to award attorney's fees "for expenses incurred as a result of frivolous or vexatious litigation"), the award of costs, in most instances, will fail to adequately compensate the wrongly-sued defendant. *See* Prosser & Keeton, *supra*, § 120 at 889 (stating that "where the costs [awarded to successful litigants] are set by statute at trivial amounts ... there can be no pretense at compensation even for the expenses of the litigation itself"); *see also Ackerman*, 15 P.2d at 967 (analyzing costs statute and stating that successful defendant in an action "can at best only recoup a very small portion of the damage inflicted"). Comprehensive compensation, then, is normally available only through an action sounding in tort. Given the other elements safeguarding the legitimate use of process, we conclude that it is both unnecessary and somewhat arbitrary to limit tort liability to those instances in which a plaintiff suffers

special damages. *See Greenberg,* 890 P.2d at 900–01 (rejecting special damages as unnecessary given the heavy burden of proof already imposed on the plaintiff); Prosser & Keeton, *supra,* § 120, at 890 ("[T]he plaintiff's heavy burden of proof provides sufficient protection to the honest litigant.").

(38) For these reasons and consistent with our recognition that malicious prosecution and abuse of process should be restated as a single cause of action in order to achieve the ultimate, common purposes for which they were created, we decline to require special damages as a necessary element in a claim for malicious abuse of process. A malicious institution of civil proceedings without probable cause will be tortious even though there has been no showing of an arrest of the person or attachment of the property of the defendant, and no special injury sustained. A plaintiff may recover the normal expenses of defending against the underlying claim. Nonetheless, the plaintiff has the burden of demonstrating actual damages for all forms of harm, including reputational or emotional harm. *See Gertz,* 418 U.S. at 349–50, 94 S.Ct. at 3012 ("Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury.").

## V. APPLICATION OF MALICIOUS ABUSE OF PROCESS TO DEVANEY'S CLAIM

(39) The district court granted summary judgment on two grounds: (1) Thriftway had probable cause to sue DeVaney for defamation and intentional interference with business relations; and (2) Thriftway had no ulterior motive in suing DeVaney. The Court of Appeals, in affirming the grant of summary judgment, relied on the alternative grounds that DeVaney had not suffered special damages and that Thriftway's acts did not rise to the level of abuse of process. We have already concluded that there is no requirement of special damages for the tort of malicious abuse of process. With respect to the other grounds relied upon below, DeVaney contends that there are genuine issues of

material fact which preclude summary judgment. We agree.

### A. Initiation of Proceedings and the Overt Act Requirement

(40) DeVaney alleged, and Thriftway does not dispute, that Thriftway initiated civil proceedings against DeVaney for defamation and intentional interference with business relations. In his complaint, DeVaney also alleged two overt acts, a lack of probable cause and procedural improprieties, that could, separately, support the misuse of process element for malicious abuse of process. We conclude that there are genuine issues of material fact as to both types of misuse of process.

### 1. Lack of Probable Cause

(41) DeVaney alleged that Thriftway filed suit against him without probable cause. The existence of probable cause is a matter of law and shall be decided by the trial judge. *Leyser,* 5 N.M. at 362–63, 23 P. at 174; Restatement (Second) of Torts § 681B(1)(c). However, the circumstances surrounding the filing of the complaint, if in dispute, must be resolved by a fact-finder. *Leyser,* 5 N.M. at 362–63, 23 P. at 174; Restatement (Second) of Torts § 681B(2)(a). While the district court found that probable cause existed, we believe there were unresolved disputed facts, material to the issue of probable cause, which preclude the resolution of this issue as a matter of law.

(42) Thriftway voluntarily dismissed its defamation claim against DeVaney. As a result, the action did not terminate in Thriftway's favor, and there is no conclusive presumption of probable cause. Because DeVaney asserted his claim after the termination of the earlier proceeding rather than alleging a lack of probable cause in a counterclaim, DeVaney must prove a lack of probable cause by a preponderance of the evidence.

(43) DeVaney contends that Thriftway is a public figure and that the statements at issue involved matters of public concern. "Whether a person is a public figure is a question of law." *Marchiondo v. Brown,* 98 N.M. 394, 399, 649 P.2d 462, 467

(1982). At the time the article was published, Thriftway was negotiating with the Navajo Nation Economic Development Council (Council) for the sale of Thriftway's stores within the Navajo Nation. There were several articles appearing in the newspaper discussing Thriftway's business practices in relation to the negotiations both before and after the publication of the article with DeVaney's statements.[5] In addition, the buyout would affect more than merely the direct participants in the negotiations. For purposes of determining the appropriate standard in defamation actions, *see Wolston v. Reader's Digest Ass'n. Inc.,* 443 U.S. 157, 167, 99 S.Ct. 2701, 2707, 61 L.Ed.2d 450 (1979); *Hutchinson v. Proxmire,* 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979); *Gertz,* 418 U.S. at 342, 94 S.Ct. at 3008, each of these facts is relevant in evaluating Thriftway's status as a public or private figure. *See Little v. Breland,* 93 F.3d 755, 757 (11th Cir.1996) (discussing the definition of a public controversy and considering whether the matter affects more than the direct participants); *Blue Ridge Bank v. Veribanc, Inc.,* 866 F.2d 681, 688 (4th Cir.1989) ("[A] plaintiff should not be considered a limited-purpose public figure absent the existence of a pre-defamation public controversy in which the plaintiff has become directly involved."). Based on these facts, we conclude that the subject of the buyout was a matter of public concern and created a public controversy in which Thriftway voluntarily injected itself. *Cf. Coronado Credit Union v. KOAT Television, Inc.,* 99 N.M. 233, 241, 656 P.2d 896, 904 (Ct.App.1982) (concluding that a large credit union was a public figure with respect to statements involving matters of public concern). We also conclude that, based upon a reasonable pre-filing investigation of the law of defamation, Thriftway should have anticipated both that it would be considered a limited public figure and that DeVaney's statements would be considered a matter of existing public controversy. Thus, Thriftway should have known that it would have the burden of proving both that the statements were false and that DeVaney made the statements with knowledge of falsity or with a reckless disregard of the truth. *See Gertz,* 418 U.S. at 342, 94 S.Ct. at 3008; *cf. Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986) (stating that a private figure defamation plaintiff suing over a matter of public concern must demonstrate both falsity and fault).

(44) DeVaney made statements about the business practices of Thriftway that were verifiable by documentation in the exclusive possession of Thriftway. Specifically, DeVaney stated that Thriftway's gas prices were higher within the Navajo Nation in order to compensate for a price war outside the Navajo Nation. DeVaney also stated that Thriftway frequently fired its managers after only a short time on the job, failed to adequately train managers in Navajo culture, and paid managers a relatively low wage. DeVaney contends that these statements were truthful and that Thriftway either knew or should have known, after a reasonable pre-filing inquiry, of the statements' veracity. Thriftway contends that these statements were false, yet it has refused to comply with requests for documentation which would likely demonstrate the falsity or truthfulness of the statements. Thriftway would not have been able to prove the defamation claim without the disclosure of its gas pricing system and its personnel practices. Thriftway must have known the issues of pricing and personnel relations would be raised in the case; the fact that it dismissed the case following the court's ruling compelling discovery might support an inference that the documents contained information demonstrating that DeVaney's statements were truthful. *Cult Awareness Network,* 226 Ill.Dec. at 610, 685 N.E.2d at 1353 (stating that a dismissal may give rise to an inference of a lack of probable cause under some circumstances); Restatement (Second) of Torts § 674 cmt. j ("Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings

---

5. Thriftway argued in its answer brief that DeVaney raised certain facts, including the existence of other newspaper articles, for the first time on appeal. The record supports a conclusion that the facts on which we rely were properly before the trial court in ruling on the motion for summary judgment.

are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn."). Without Thriftway's production of the documents, a jury might make such an inference, and the trial court then could conclude that Thriftway did not have probable cause in filing its claim against DeVaney because the information would have been readily available to Thriftway in a reasonable pre-filing inquiry. If Thriftway does produce the documents on remand, it is possible that this issue could be resolved as a matter of law.

(45) In addition, Thriftway had the burden of proving by clear and convincing evidence that DeVaney made his statements with knowledge of falsity or with a reckless disregard of the truth. *See Gertz,* 418 U.S. at 342, 94 S.Ct. at 3008. Thriftway introduced scant evidence supporting its allegation of malice. It has failed to introduce substantial evidence suggesting that DeVaney "entertained serious doubts as to the truth" of his statements, *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), other than his being fired from Thriftway for unrelated reasons. Because Thriftway knew or should have known of the high standard of proof on the issue of malice, we believe there is a genuine issue of material fact as to whether Thriftway held a reasonable belief that De-Vaney spoke with actual malice.

■■■■ (46) DeVaney also contends that Thriftway had no reasonable basis to believe it had been damaged by the article at the time it filed suit against DeVaney. Thriftway filed a complaint only fifteen days after the article appeared in the newspaper. Also, in depositions, representatives of

Thriftway were equivocal about the basis for believing the article caused any harm to Thriftway. These facts might supply the basis for a reasonable inference of Thriftway's lack of reasonable belief that it had suffered any compensable damages. We conclude there are genuine issues of material fact on the issue of probable cause, and the district court erred in deciding that probable cause existed as a matter of law.[6]

## 2. Procedural Impropriety

■■■■ (47) DeVaney alleged that Thriftway misused the process of the court by failing to attend a deposition, prematurely filing a motion for default judgment, refusing to comply with discovery requests, and dismissing its complaint. The Court of Appeals concluded that these acts were insufficient, as a matter of law, to fulfill the overt act requirement. We disagree.

(48) While none of these acts were improper per se, each could rise to the level of a procedural abuse under certain circumstances. The voluntary dismissal of a complaint is a proper act contemplated by our rules of civil procedure. *See* Rule 1–041(A) NMRA 1997. In addition, the failure to produce documents in response to a discovery request is not improper if there is a legitimate basis for doing so. *See* Rule 1–034(B) NMRA 1997 (providing opportunity for objection to requests for production of documents); Rule 1–026(C) NMRA 1997 (providing for protective orders from discovery in limited circumstances). Finally, the failure to attend a deposition could be excusable under the right circumstances and not rise to the level of an improper act for purposes of a malicious abuse of process action. *See* Rule 1–037(D)(1), (3) NMRA 1997 (providing for discretionary sanctions for failure to appear

---

**6.** Because we conclude that there are genuine issues of material fact as to the existence of probable cause on the defamation claim, we need not address whether there are also genuine issues of material fact as to the existence of probable cause on the claim for intentional interference with business relations. We note, however, that the two claims are connected. In order to assert a claim for intentional interference with prospective business relations, a plaintiff must demonstrate either an improper motive, such as spite or vengeance, or an improper act, such as

defamation. *Anderson v. Dairyland Ins. Co.,* 97 N.M. 155, 159, 637 P.2d 837, 841 (1981); *M & M Rental Tools, Inc. v. Milchem, Inc.,* 94 N.M. 449, 454, 612 P.2d 241, 246 (Ct.App.1980). Similarly, in order to assert a claim for intentional interference with existing contractual relations, a plaintiff must demonstrate that "the interference is without justification or privilege." *Williams v. Ashcraft,* 72 N.M. 120, 121, 381 P.2d 55, 56 (1963). In addition, the existence of probable cause on the issue of damages involves a similar inquiry for both claims.

at a scheduled deposition and a mandatory award of expenses "unless the court finds that the failure was substantially justified"); *cf. Kalosha v. Novick,* 77 N.M. 627, 630–31, 426 P.2d 598, 600–01 (1967) (discussing the need for a willful violation under a prior version of Rule 1–037(D)); *Sandoval v. United Nuclear Corp.,* 105 N.M. 105, 108, 729 P.2d 503, 506 (Ct.App.1986) (same).

(49) Nonetheless, these actions must be evaluated in context in order to determine whether they were improper. The documents Thriftway refused to produce would have been necessary in proving the allegation of falsity. Thriftway could not reasonably anticipate carrying its burden of proof in the defamation action without having to disclose the information requested. In this context, Thriftway's refusal to comply with the discovery request may have been a misuse of process. The fact that Thriftway dismissed its suit after being compelled by the court to produce the documents could support an inference that there was not a legitimate basis for the failure to produce.

(50) With respect to the failure to appear for deposition and premature filing for default judgment, Thriftway does not contest the substance of the allegations but rather contends that these acts were not sufficiently improper. For example, in the deposition of Defendant Dalley, he states that he missed the deposition in order to attend a business meeting. DeVaney contends that the surrounding circumstances could support an inference that Thriftway committed these procedural violations in order to delay its inevitable dismissal of the claim and to prolong the threat to DeVaney's non-tortious speech. We agree. We conclude that genuine issues of material fact remain.

**B. Malice**

▆▆▆▆ (51) Based on DeVaney's allegations, there are three possible bases for establishing Thriftway's malice in its alleged misuse of process: (1) filing the claim with knowledge that it was groundless; (2) pursuing the action primarily for the purpose of obtaining a retraction; and (3) pursuing the action and misusing process primarily for the purpose of intimidation in order to silence

DeVaney's non-tortious speech. The second form of malice alleged, attempting to obtain a retraction, does not constitute an improper purpose and cannot form the basis of a malicious abuse of process action. In order to constitute malice, a purpose must be repugnant to the remedy provided by law, a perversion of the legal system such as extortion, delay, or harassment. While a retraction is not a type of remedy available in an action for defamation, *Kramer v. Thompson,* 947 F.2d 666, 680–81 (3d Cir.1991) (stating that mandatory retraction may be constitutionally infirm), it is a legitimate way to mitigate damages, *id.,* and it is in no way improper to request a retraction in lieu of compensatory damages in a settlement offer.

(52) However, we conclude that there are genuine issues of material fact as to the first and third forms of malice alleged. Malice is an issue for the jury unless the material facts are undisputed. *See* Restatement (Second) of Torts § 681B(2)(b). DeVaney contends that Thriftway knew its claim was groundless because it possessed documents supporting the truthfulness of DeVaney's statement. In addition, DeVaney has submitted deposition testimony supporting his claim that "one of Thriftway's motives was to stop DeVaney from contacting the Navajo Nation personnel." At the time, the Council was in the midst of some business negotiations with Thriftway, and Thriftway was concerned that DeVaney's contact with Council personnel would interfere with the negotiations. In Thriftway's lawsuit against DeVaney, Thriftway only complained of the speech made in the newspaper article. It has not contended that other contacts with Council personnel would have been tortious. A reasonable juror might infer from such conduct Thriftway's primary improper motive to silence DeVaney's non-tortious speech or an improper motive in filing suit with knowledge that it lacked probable cause. The district court erred in granting summary judgment on this ground.

**VI. CONCLUSION**

(53) We believe malicious prosecution and abuse of process should be restated as a single cause of action known as malicious

abuse of process. Under this new tort, there must be a misuse of process by the defendant beyond the mere initiation of proceedings against the plaintiff. In addition, a plaintiff must demonstrate that the defendant acted with malice. However, we do not require proof of either a favorable termination or of special damages in order to maintain an action for malicious abuse of process.

(54) DeVaney's claim raises genuine issues of material fact with respect to each element of malicious abuse of process. There are unresolved factual matters regarding the existence of probable cause in Thriftway's filing of its suit against DeVaney. Additionally, there are disputed facts which could demonstrate that Thriftway misused the judicial process, specifically by misusing discovery, a motion for default judgment, and voluntary dismissal. Further, there is a genuine issue of material fact as to whether Thriftway acted primarily for an improper purpose, either because it possessed knowledge that it lacked probable cause or because it acted primarily to silence DeVaney's nontortious speech. Finally, there are unresolved issues of material fact regarding the damages sustained by DeVaney as a result of Thriftway's suit against him. Accordingly, we reverse the grant of summary judgment by the district court and the affirmance by the Court of Appeals. We remand this cause for trial on the merits of DeVaney's claim as one of malicious abuse of process.

(55) **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, SERNA and McKINNON, JJ., concur.

