2002-NMCA-086

52 P.3d 418

**Rose L. GONZALES, Personal Representative of the Estate of Leonarda L. Lopez, Deceased, Plaintiff–Appellee,**

v.

**Leeroy LOPEZ, Ruthalene P. Lopez, and Eddie Paul Lopez, Defendants–Appellants.**

No. 21,813.

Court of Appeals of New Mexico.

June 27, 2002.

Kelan Emery, Taos, NM, for Appellee.

G. Holdt Garver, G. Holdt Garver, Chartered, Albuquerque, NM, for Appellants.

## OPINION

CASTILLO, Judge.

{1} In the final years of her life, Leonarda L. Lopez (Mother) transferred the bulk of her estate to her sons Leeroy and Eddie Paul Lopez and Leeroy's wife, Ruthalene (Peggy) (together referred to as Defendants). Mother died in October 1996 at the age of ninety-two and was survived by her ten children. Daughter Rose L. Gonzales, as personal representative of Mother's estate (Estate), filed a complaint against Defendants alleging undue influence, fraud, misrepresentation, and breach of contract in obtaining warranty deeds and real estate contracts to property originally owned by Mother. Defendants appeal from the district court judgment setting aside the deeds and real estate contracts, awarding attorney fees, and assessing punitive damages against them. We reverse the award of attorney fees and affirm on all other issues.

## BACKGROUND

{2} Mother owned four tracts of real property in Taos County, New Mexico identified as the Chamisal, Store, Ojito, and Home Place properties. Concerned about her health, Mother discussed with Leeroy and Peggy the potential sale of some of her property in return for payment of monies, personal care, and property maintenance. On May 8, 1990, Mother signed a warranty deed transferring the Store property to Leeroy and Peggy. Also on May 8, 1990, Mother entered into a real estate contract with Leeroy and Peggy for the Chamisal property (first Chamisal property contract). Sometime after executing the first Chamisal property contract, Mother realized it did not contain the terms she had agreed upon. In September 1991 Mother filed an affidavit of termination and later that year sued Leeroy and Peggy for fraud, misrepresentation, and breach of contract (1991 action). In 1992 the parties settled their differences. They executed a settlement agreement and an order of dismissal with prejudice was entered in the 1991 action.

{3} In 1993, three more transactions occurred. On March 8, 1993, Mother signed a Contract of Purchase and Sale for the sale of the Ojito property to Defendants (the Ojito property contract). On March 30, 1993, Mother signed another contract for the sale of the Chamisal property to Leeroy and Peggy (second Chamisal property contract). On August 3, 1993, Mother executed a warranty deed transferring the Home Place property to Eddie Paul. Leeroy recorded the Home Place deed without Eddie Paul's knowledge or consent. The Home Place deed was not delivered to Eddie Paul during Mother's lifetime and he was unaware that Mother had executed a deed to him until after her death. We first address Defendants' procedural issues and then turn to their remaining claims of error. Other relevant facts and the district court's rulings are included in the pertinent sections.

## DISCUSSION

### I. Procedural Issues

{4} In its original complaint, the Estate alleged that Defendants unduly influenced Mother into signing the contracts and deeds, and made fraudulent representations regarding the purchase price and descriptions of the property to be conveyed. The Estate further alleged breach of contract for failure to make the required contract payments and to provide maintenance and care to Mother as agreed by the parties. After discovery, the Estate filed an amended complaint asserting a new claim that the conveyance of the Home Place property to Eddie Paul

should be set aside as an incomplete gift, and deleting the allegations of undue influence by Eddie Paul and Peggy as to this property only. In response to the amended complaint, Defendants filed a jury demand requesting a jury trial on all the issues or, in the alternative, on the new issues raised by the amended complaint. In a separate pleading Defendants also filed an answer to the amended complaint (second answer), a counterclaim, a third-party complaint, and another jury demand as to the issues raised by these pleadings. The district court struck both jury demands as well as the counterclaim, third-party complaint, and a portion of Defendants' second answer. Defendants claim several errors relating to the district court's pretrial rulings.

### A. Striking Portions of the Answer to Amended Complaint

■ {5} Defendants claim that the district court erred in striking their second answer because they were entitled to respond to the new allegations in the amended pleading. In analyzing this issue, we observe the following. When preparing its amended complaint, the Estate was required to reassert the allegations previously made in the original complaint, or risk abandoning them. *See Griego v. Roybal,* 79 N.M. 273, 275, 442 P.2d 585, 587 (1968) (stating that "failure to re-allege allegations of an original pleading constitutes an abandonment of those allegations not re-alleged"). Consequently, the amended complaint contained almost all the allegations of the original complaint plus the new theory regarding the uncompleted gift of the Home Place property. When Defendants responded to the amended complaint, they denied allegations previously admitted in their answer to the original complaint (first answer).

{6} The district court ruled that Defendants could only make admissions, denials, and affirmative defenses in response to the new allegations. Thus, the district court struck those portions of the second answer that related to the original complaint and allowed Defendants' responses to the new allegations. Defendants' answers to the original complaint are found in the first answer, and their responses to the new allega-

tions are found in the second answer. We are not aware of any rule or case law requiring the district court to accept without some good cause shown an amended answer which changes responses to identical allegations in the original complaint. Defendants made no credible effort below to explain why changes from responses in their first answer were required. Further, at the hearing on the motion to strike the second answer, the district court voiced a concern about the potential for requiring discovery if previously admitted allegations were now denied. Given that the trial was then just days away, we believe these concerns were reasonable. We conclude, therefore, that the district court did not abuse its discretion in striking the portions of Defendants' second answer relating to the original allegations. *See* Rule 1–012(F) NMRA 2002 (providing that district court may strike from the pleadings any insufficient defense or redundant or immaterial matters).

### B. Right to Jury Trial on Amended Complaint

■ {7} Defendants argue that by amending the complaint the Estate created a new issue that entitled them to a jury trial. The New Mexico Constitution continues the right to a jury trial in those cases where it existed either at common law or by statute at the time of the adoption of the constitution. *See* N.M. Const. art. II, § 12 ("The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."); *see also Evans Fin. Corp. v. Strasser,* 99 N.M. 788, 789, 664 P.2d 986, 987 (1983) ("The common law jury trial existed in the Territory of New Mexico prior to adoption of the Constitution."). The distinction between legal and equitable issues has remained the test for determining whether common law jurisdiction and the right to a jury trial exists. *See id.* "If the remedy sought is legal, parties are entitled to a jury trial; if the remedy sought is equitable, there is no jury trial as of right." *Id.* In the amended complaint, the Estate sought to have the Home Place property deed set aside as an incomplete gift. A suit to set aside a deed on this basis is one in equity, and an action for which a jury trial as of right traditionally did not

exist under common law. *Cf. Grandi v. LeSage,* 74 N.M. 799, 806, 399 P.2d 285, 290 (1965) (distinguishing an action at law for damages from a suit in equity to set aside a contract).

{8} Moreover, there is no statute conferring a right to a jury trial under these circumstances. Defendants rely on *In re Last Will & Testament of Ferrill,* 97 N.M. 383, 389–90, 640 P.2d 489, 495–96 (Ct.App.1981), a will contest case in which this Court discussed the right to trial by jury under NMSA 1978, § 45–1–306 (1975) of the New Mexico Probate Code, which provides:

> If demanded, in the manner provided by the Rules of Civil Procedure, a party is entitled to a trial by jury in a formal testacy proceeding and in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury.

*Ferrill* is distinguishable. The present case is not a will contest case, and is not governed as such by the Probate Code. Further, as we stated before, there is no constitutional right to a jury trial on equitable issues. In addition, Defendants' reliance on *Griego* is misplaced. In *Griego* the counter-claimant converted a "suit in equity" to an "action at law" by abandoning the claim to quiet title and pleading possession of land. Here, nothing in the record suggests that the equitable nature of the Estate's suit was converted to an action at law. *Cf. Griego,* 79 N.M. at 276, 442 P.2d at 588.

### C. Right to Jury Trial on Dismissed Counterclaim

■ {9} Defendants also argue that they were entitled to a jury trial on the legal issues raised by their counterclaim. It is established that parties to a suit in equity have a right to a jury trial when their counterclaim raises a legal issue. *See Evans Fin. Corp.,* 99 N.M. at 791, 664 P.2d at 989.

> When the applicable rule of procedure requires or allows the defendant to assert as a counterclaim any claim he has against the plaintiff if it arises out of the subject matter of the original action, the defendant is entitled to a jury trial of the legal issues presented in the counterclaim.

In their counterclaim, Defendants alleged prima facie tort as a result of willful false allegations made in the original complaint, and requested compensatory and punitive damages. Therefore, the counterclaim, if allowed, presented a legal issue entitling Defendants to a jury trial. For the following reasons, however, we hold that the counterclaim was properly dismissed.

■ {10} The district court agreed with the Estate's argument below and struck the counterclaim without prejudice on the basis that the counterclaim was an unripe claim for malicious prosecution. Prior case law required that a plaintiff await the outcome of the underlying suit before filing an action for malicious prosecution. *See Westland Dev. Co. v. Romero,* 117 N.M. 292, 294, 871 P.2d 388, 390 (Ct.App.1994) ("To allow such a [malicious prosecution] claim to be heard in the same case in which the original complaint was filed would possibly be confusing to a jury because a jury might decide that because a plaintiff did not win, the complaint lacked probable cause."). The Supreme Court has since held that a malicious prosecution claim can be brought as a counterclaim in the same action. *DeVaney v. Thriftway Mktg. Corp.,* 1998–NMSC–001, ¶ 20, 124 N.M. 512, 953 P.2d 277 ("[a]n improper act, or misuse of process, need not occur subsequent to the filing of a complaint and might, in fact, be found in the complaint itself"). Therefore, the district court based its decision to strike the counterclaim on an erroneous ground. The decision, however, can be upheld on other grounds.

{11} Defendants concede that their counterclaim did not arise until after the filing of the original complaint. *See* Rule 1–013(E) NMRA 2002. We characterize the counterclaim as permissive because it arose not from Defendants' conduct as alleged in the complaint but from the filing of the complaint itself. Rule 1–013(B) (defining a permissive counterclaim as "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim"). Rule 1–013(B) does not compel the district court to entertain a permissive counterclaim, and Rule 1–013(E) requires the district court's permis-

sion to file a counterclaim maturing or acquired after pleading. Thus, in either case, allowing the counterclaim was within the district court's discretion. *See Critical–Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 702, 704 (2nd Cir.2000) (discussing counterclaims deemed as permissive under Rule 1–013(B) as being subject to the court's discretion). Allowing addition of the counterclaim would complicate trial of the basic estate claim, require additional discovery and potentially delay an imminent trial. Under these circumstances, it is not an abuse of discretion by the district court to deny inclusion of a permissive counterclaim.

### D.  Third–Party Complaint

{12} Leeroy and Peggy argue that their third-party complaint was erroneously stricken and that they were entitled to a jury trial on the issues raised by it. In the third-party complaint, Leeroy and Peggy alleged that Rose Gonzales, prior to Mother's death, deliberately attempted to interfere with the contract between Leeroy, Peggy, and Mother, and that Rose unduly influenced Mother to terminate the contract. The third-party complaint asserted entirely new claims against Rose in her individual capacity, not in her capacity as personal representative of the Estate. Thus, the third-party complaint in a sense attempted to name a new party to the action with new theories of recovery. Allowing the third-party complaint eighteen months after filing of the Estate's action, and within days of a trial setting, would have unduly complicated the litigation and almost certainly would have required continuation of the trial. Because the third-party complaint was against Rose in her individual capacity, it is even possible that she would have had to retain separate counsel to defend her individual interests. Under these circumstances, it was not an abuse of discretion by the trial court to refuse to accept filing of a third-party complaint.

### II.  Application of Res Judicata to Chamisal Property Deeds

{13} Defendants assert that Mother's 1991 action against Leeroy and Peggy barred the present action under the doctrine of res judicata. The 1991 action involved the first Chamisal property contract and was resolved out of court. After the 1991 action was dismissed, Mother, Leeroy, and Peggy entered into the second Chamisal property contract in 1993. The district court found that the Estate's claims against Defendants based on the first Chamisal property contract were barred by res judicata but that the second Chamisal property contract constituted a new contract separate from the first Chamisal property contract; therefore, res judicata did not bar claims raised under the second contract.

{14} The doctrine of res judicata "applies when the second suit has the following relationship with the first suit: (1) The parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits." *Bennett v. Kisluk*, 112 N.M. 221, 225, 814 P.2d 89, 93 (1991) (Franchini, J., dissenting). We agree with the district court that any causes of action the Estate had on behalf of Mother that were based on the first Chamisal property contract were barred by res judicata. *See* NMSA 1978, § 45–3–703(E) (1975) (stating that a personal representative has "same standing to sue ... as his decedent had immediately prior to death"). We also agree with the district court that the doctrine of res judicata does not bar claims relating to the second Chamisal property contract. The second requirement for res judicata is not met because the allegations in the present action are based on conduct occurring after settlement of the 1991 action.

{15} Defendants' assertion that the second Chamisal property contract had to be executed to effect the settlement of the 1991 action is unavailing. Further, any claims based on Defendants' conduct in obtaining the second contract are not barred by res judicata. Consequently, we affirm the district court's judgment.

### III.  Notice of Default

{16} Defendants argue that the district court erred in setting aside the second Chamisal property contract and the Ojito

property contract because Defendants were not given notice of default and an opportunity to cure the alleged breach before the Estate filed its complaint, as required under the contracts. The Estate contends Defendants did not raise this issue below and, therefore, it was not preserved. The record shows, however, that Defendants submitted findings of fact to this effect. *Cf. Cockrell v. Cockrell,* 117 N.M. 321, 324, 871 P.2d 977, 980 (1994) (stating that evidence may not be reviewed on appeal when the party seeking review has failed to submit requested findings of fact and conclusions of law to the district court and the appellant has otherwise failed to object to the findings or call the district court's attention to the insufficiency of the evidence). Therefore, we address the merits.

{17} Defendants assert that contract terms allowing for reasonable time for notice and cure of a default prior to forfeiture should be enforced. *See Yu v. Paperchase P'ship,* 114 N.M. 635, 636, 845 P.2d 158, 159 (1992); *Martinez v. Martinez,* 101 N.M. 88, 91–92, 678 P.2d 1163, 1166–67 (1984); *Bishop v. Beecher,* 67 N.M. 339, 340–41, 355 P.2d 277, 278 (1960). While Defendants' general proposition of law is correct, it does not advance their appeal. The district court set aside the second Chamisal contract and the Ojito contract based on Defendants' "fraudulent conduct, undue influence, lack of consideration and breaches of contract." Because the district court based its decision in part on other grounds on which Defendants do not appeal, any error based on lack of notice of default would not affect the result. *Cf. Swallows v. Sierra,* 68 N.M. 338, 338, 362 P.2d 391, 391 (1961) (stating that unchallenged findings are conclusive on appeal).

**IV. Award of Attorney Fees**

{18} The district court awarded the Estate its reasonable attorney fees and costs, to be paid by Defendants. Defendants argue that no statute, court rule, or contract authorizes the award of attorney fees under these circumstances. The Estate asserts that the district court awarded attorney fees based on Defendants' conduct, specifically by breaching their fiduciary duty to Mother. The

district court found that: "By virtue of their relationship and dealings with Mother, Lee[r]oy and Peggy invited the Mother to rely upon them and to trust them to deal with her fairly and in good faith, thus giving rise to a fiduciary relationship." The district court concluded that as a result of the fraudulent conduct, undue influence, lack of consideration, and breaches of contract, the property contracts and warranty deeds were set aside and declared void.

{19} New Mexico follows the American Rule which "recognizes the authority of statute, court rule, or contractual agreement" in awarding attorney fees. *See N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 9, 127 N.M. 654, 986 P.2d 450. The Estate argues that the district court relied on "exceptions arising from certain exercises of a court's equitable powers." *Id.* ¶ 15. This equitable exception has been applied only in limited circumstances when litigants have established their rights to a common fund, such as in cases involving trusts, quasi-public corporations, estates, and wrongful injunctions. *Id.* ¶¶ 19, 21. New Mexico has recognized the equitable doctrine that authorizes "an award of attorney fees for services rendered which confer a benefit upon the estate." *See In re Estate of Foster,* 102 N.M. 707, 714, 699 P.2d 638, 645 (Ct.App. 1985) (affirming award of attorney fees out of the estate). "A benefit to the estate occurs when the action prevents or corrects an unlawful distribution of the estate." *In re Estate of Gardner,* 114 N.M. 793, 804, 845 P.2d 1247, 1258 (Ct.App.1992) (same). The estate cases recognizing the equitable exception are distinguishable because the present case does not involve an unlawful distribution, and the award of attorney fees was assessed against Defendants and not the Estate. *See, e.g., In re Estate of Foster,* 102 N.M. at 713–14, 699 P.2d at 644–45 (discussing cases applying the equitable doctrine exception to actions involving estates).

{20} Moreover, awarding attorney fees in this context would be contrary to the policies advanced by the American rule.

The equitable exception recognized in the common fund cases is consistent with the American rule [because a] losing litigant

does not pay attorney fees in addition to the amount of recovery.... Thus, a losing litigant is no better or worse off as a result of the [common fund] doctrine's application. ·

See Johnson, 1999–NMSC–028, ¶ 20, 127 N.M. 654, 986 P.2d 450 (citation and internal quotation marks omitted). The purpose of the rule is to impose costs on the party benefitting from the suit, not to burden the losing party with the cost of prosecuting or defending a suit. Id. The district court ordered Defendants to pay the fees, not the benefitting party, the Estate. Consequently, we conclude that the district court abused its discretion in awarding attorney fees. Id. ¶ 7 (stating that we review the district court's decision for an abuse of discretion and in doing so, "we may characterize as an abuse of discretion a discretionary decision that [is] premised on a misapprehension of the law") (citation and internal quotation marks omitted).

### V. Punitive Damages Against Eddie Paul

{21} The district court awarded punitive damages against all defendants in an amount equal to all amounts paid on the various contracts. Until Mother's death, Eddie Paul made one-half of the monthly payments of $804.30 required by the terms of the Ojito property contract.

{22} Defendants argue that there was no basis for awarding punitive damages against Eddie Paul because the personal representative testified she had no knowledge that he exerted undue influence on Mother. In addition, Defendants assert that the personal representative stated under oath that Eddie Paul was an unknowing, passive participant in the undue influence exerted by Leeroy. We review the district court's findings of fact to determine if there was sufficient evidence of Eddie Paul's conduct to support an award of punitive damages. See Sunwest Bank v. Daskalos, 120 N.M. 637, 639, 904 P.2d 1062, 1064 (Ct.App.1995) (stating that the "standard of review for an award of punitive damages is whether the award is supported by substantial evidence").

{23} We agree with Eddie Paul that an award of punitive damages on a vicarious liability theory, as argued by the Estate, is not supported by law. The Estate relies on cases in which punitive damages were allowed against a principal based on the conduct of an agent in the context of an employment relationship. E.g., Abeita v. N. Rio Arriba Elec. Coop., 1997–NMCA–097, ¶ 36, 124 N.M. 97, 946 P.2d 1108. Those circumstances are not present here. Therefore, the cases allowing punitive damages under a vicarious liability theory are distinguishable. See Fernandez v. Farmers Ins. Co., 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("cases are not authority for propositions not considered") (quoting Sangre de Cristo Dev. Corp. v. City of Santa Fe, 84 N.M. 343, 348, 503 P.2d 323, 328 (1972)).

{24} Punitive damages are allowable upon a showing that the breaching party acted with reckless disregard for the interests of others. Gilmore v. Duderstadt, 1998–NMCA–086, ¶ 28, 125 N.M. 330, 961 P.2d 175 (citation and internal quotation marks omitted). Punitive damages must be based on "some evidence of a culpable mental state." Id. (citation and internal quotation marks omitted). See also UJI 13–1827 NMRA 2002 (providing that punitive damages may be awarded if defendant's conduct is found to be malicious, willful, reckless, wanton, fraudulent or in bad faith).

A mental state sufficient to support an award of punitive damages will exist when the defendant acts with reckless disregard for the rights of the plaintiff—i.e., when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fail[s] to exercise care to avoid the harm.

Paiz v. State Farm Fire & Cas. Co., 118 N.M. 203, 211, 880 P.2d 300, 308 (1994) (citation and internal quotation marks omitted). "[R]eckless is defined as the intentional doing of an act with utter indifference to the consequences." Clay v. Ferrellgas, Inc., 118 N.M. 266, 270, 881 P.2d 11, 15 (1994) (citation and internal quotation marks omitted).

{25} The district court found that Eddie Paul accompanied Leeroy and Peggy to an attorney's office where Mother signed

the Last Will and Testament and Ojito property contract. The district court found the circumstances surrounding the meeting to be "suspicious, and indicative of the over-reaching, over-bearing manner in which Lee[r]oy and Peggy dealt with affairs and property of [Mother]," and Defendants did not give "good and valuable consideration for the substantial property rights which were obtained under the Ojito Contract." Additionally, there was a finding that despite letters being prepared at that time to offer Mother's other children an opportunity to purchase a share of the Ojito property, each of the heirs testified they did not receive any such letter. There was evidence to support these findings. Based on these findings, the district court could reasonably infer that Eddie Paul knew that Leeroy's conduct would deprive the siblings of any right to purchase a portion of the property, and further, such action would benefit Leeroy and would be in contravention of Mother's intentions. Eddie Paul was present at the meeting and did nothing to prevent Leeroy's wrongdoing in disregard of the rights of Mother and the rights of his siblings. Eddie Paul's culpable conduct was his knowing acquiescence in Leeroy's wrongful conduct and his willingness to profit from it.

{26} Defendants argue that the personal representative's testimony conflicts with the conclusion that Eddie Paul exerted undue influence on Mother. This is irrelevant since Eddie Paul did not have to play an active role but only fail to act to avoid known potential harm to Mother. *See Paiz*, 118 N.M. at 211, 880 P.2d at 308 (stating that in awarding punitive damages the inquiry should be on whether the wrongdoer acted in contravention of the victim's rights while being consciously aware the conduct was wrongful). The district court entered a finding of fact stating that "[e]ven if Peggy and Eddie Paul did not play an active role in unduly influencing the Mother, they were aware of the actions of Lee[r]oy, and/or were the beneficiaries of the fraud and misconduct of Lee[r]oy." The personal representative's testimony that she had no knowledge of Eddie Paul exerting undue influence on Mother is not dispositive. Insofar as the evidence concerning Eddie Paul's role is conflicting,

we defer to the district court's decision. *See Buckingham v. Ryan*, 1998–NMCA–012, ¶ 10, 124 N.M. 498, 953 P.2d 33 ("[W]hen there is a conflict in the testimony, we defer to the trier of fact."); *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (stating that when considering a substantial evidence claim, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder"). There was sufficient evidence to support the trial court's award of punitive damages.

## VI. Punitive Damages Against Leeroy and Peggy

{27} Defendants first argue that the district court failed to consider Leeroy and Peggy's willingness to restore the Ojito and Store properties to the Estate. The district court rejected Defendants' requested findings of fact on this issue. *See Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (stating that failure of a district court to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative). We do not agree that the award of punitive damages against Leeroy and Peggy necessarily implies that the district court failed to consider their offer. *See Farmers, Inc. v. Dal Machine & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990) (stating that appellate court presumes the district court is correct and burden is on appellant to clearly point out how the district court allegedly erred). It was within the district court's reasoned discretion to decide the actual impact of Leeroy and Peggy's offer. It would have been well within the evidence for the district court to decide that an offer made at trial was not an adequate cure for the Defendants' actions in the years prior to that time and that further punishment was yet required. We will not second guess the court's weighing of the evidence in that regard.

{28} In addition, Defendants contend that in awarding punitive damages the district court failed to limit the award to an amount reasonably related to Leeroy and Peggy's ability to pay and yet deter them from future misconduct. Specifically, Defendants assert

that the award of all monies paid on the real estate contracts as punitive damages was excessive. We disagree. Tying the punitive damage award to the amount paid on the wrongful transactions is a reasonable—even poetic—response to the improper intrafamily conduct the district court found. In addition, Defendants do not indicate whether they raised the issue of financial condition or presented evidence on the issue for the district court's consideration. *See Martinez v. Southwest Landfills, Inc.*, 115 N.M. 181, 184, 186, 848 P.2d 1108, 1111, 1113 (Ct.App.1993) (stating that where the appellant fails to "include[ ] the substance of the evidence bearing upon the proposition," the Court of Appeals will not consider an appellant's sufficiency of the evidence challenge) (citation and internal quotation marks omitted); *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992) ("This court will not search the record to find evidence to support an appellant's claims."). Defendants did not file any requested findings and conclusions or a motion for reconsideration raising the issue below. Thus, the issue was not preserved and we will not raise it sua sponte. Our Supreme Court's decision in *Aken v. Plains Electric Generation & Transmission Coop., Inc.*, 2002–NMSC–021, 132 N.M. 401, 49 P.3d 662 does not require us to consider an unpreserved challenge to a punitive damage award.

### VII. Expert Opinion on Value of Property

{29} Defendants rely on *Jones v. Lee*, 1998–NMCA–008, 126 N.M. 467, 971 P.2d 858 for the proposition that the district court erred in finding the Ojito property transaction was for an unfair price when there was no expert opinion as to the actual value of the property compared to the contract price. *Jones* is distinguishable in that the present case involves issues distinct from the proper evidence needed to calculate damages in a breach of contract case. In the present case, the district court found that the Ojito property had been under contract previously at a purchase price of $122,000 and that the purchase price agreed to by Defendants was $80,000. Defendants refer to an exhibit regarding a market analysis and argue that evidence based on this exhibit is inadmissible: however, it does not appear that the district court relied on this exhibit to arrive at the $122,000 figure. Further, the district court's finding concerning the impropriety of the Ojito transaction encompasses more than just the purchase price. The district court also found that Defendants did not "give good and valuable consideration for the substantial property rights which were obtained under the Ojito Contract." The contract called for no down payment and a payout over thirteen years, but was executed when Mother was eighty-nine years old and concerned about obtaining personal care and maintenance for the remainder of her life. Further, the district court found that the monthly payments of $804.30 were set in an amount Defendants could pay rather than an amount which would be reasonable for Mother's maintenance. Clearly, the contract price was not the sole basis for the district court's findings regarding the inadequate consideration for the Ojito property.

### VIII. Completion of Gift

{30} Defendants argue that the district court erred in setting aside the deed to Eddie Paul for the Home Place property because the evidence was insufficient to overcome the presumption of a completed gift by recording the deed. We need not reach this issue. The incomplete gift was not the sole basis for the district court's decision. The district court set aside the deed on the basis that Leeroy exerted undue influence on Mother in connection with the deed. Defendants do not appeal this aspect of the district court decision. *See Crist v. Town of Gallup*, 51 N.M. 286, 290, 183 P.2d 156, 158 (1947) (holding that appellate court need not address questions unnecessary for a decision), *rev'd on other grounds by Hoover v. City of Albuquerque*, 58 N.M. 250, 252, 270 P.2d 386, 387 (1954).

### CONCLUSION

{31} For these reasons, we reverse the award of attorney fees and affirm the remainder of the district court's judgment.

{32} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and IRA ROBINSON, Judges.