This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ROBERTO L. CORDOVA and**
**JENNIE H. CORDOVA,**

Plaintiffs/Counter-Defendants-Appellants,

v. **NO. 28,208**

**JAIMIE R. CORDOVA and**
**STELLA S. CORDOVA, and**
**UNKNOWN CLAIMANTS,**

Defendants/Counter-Plaintiffs-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Richard J. Knowles, District Judge**

Roberto L. Cordova
Jennie H. Cordova
Rio Rancho, NM

Pro Se Appellants

Lastrapes, Spangler & Pacheco, P.A.
Matthew M. Spangler
Rio Rancho, NM

for Appellants

Geer, Wissell & Levy, P.A.
Robert D. Levy
Jane C. Levy
Albuquerque, NM

for Appellees

# MEMORANDUM OPINION

**FRY, Chief Judge.**

Plaintiffs Roberto and Jennie Cordova appeal the district court's judgment awarding their daughter-in-law, Defendant Stella Cordova, compensatory and punitive damages for malicious abuse of process and intentional infliction of emotional distress. The judgment was based on Plaintiffs' filing of a foreclosure action against Stella to foreclose a mortgage Roberto and Jennie held on property owned by Stella. Roberto and Jennie argue on appeal that the district court's judgment is not supported by substantial evidence. We agree and, for the following reasons, reverse the judgment against Roberto and Jennie.

**BACKGROUND**

In 1991, Jaimie Cordova, Roberto and Jennie's son, and Stella, Jaimie's wife, purchased a printing company, Cordova Printing, from Roberto and Jennie. Roberto and Jennie had owned and operated the business for some time prior to Jaimie and Stella's purchase, and Roberto continued to work at the business following the purchase. In 1999, Jaimie and Stella purchased a commercial property and moved the business into the new building. The building housed both Cordova Printing and a number of other businesses that paid rent to Cordova Printing. Roberto and Jennie helped Jaimie and Stella purchase the property by

loaning the couple approximately $271,000. The loan was secured by a mortgage on the property, the terms of which were set out in a mortgage note. The note was amended a number of times after Roberto and Jennie loaned additional funds to Jaimie and Stella. Following the final amendment in June 2005, the principal balance was approximately $690,000.

In July 2005, Jaimie died intestate, and Stella became the sole owner of Cordova Printing and the commercial property. Following Jaimie's death, Roberto continued to work at the print shop and exercised complete control over the business, including collecting rent from the other tenants, which was used to pay the monthly installments Stella owed on the note.

Shortly after Jaimie's death, Stella attempted to sell the business and the property. However, Roberto asserted that Stella did not own the business and interfered with Stella's attempts to sell it. As a result of Roberto's actions, Stella filed a lawsuit against Roberto to establish her ownership of the property and on February 10, 2006, she obtained a temporary restraining order against Roberto, which required him to vacate the premises. On March 2, 2006, Stella and Roberto entered into a global settlement agreement that resolved all pending issues between them. Approximately two weeks later, on March 15, 2006, Roberto and Jennie

filed this foreclosure action against Stella alleging that the mortgage note was in default.

Roberto and Jennie's foreclosure complaint alleged that Stella was in default on the loan because she had failed to make timely payments and because Roberto had called the note pursuant to a provision that allowed the note to be made payable in full for any reason upon thirty days' notice. Roberto and Jennie attached a letter to the complaint that Roberto's attorney had sent to Stella in December 2005 stating that Stella was in default on the note and that pursuant to the terms of the note, Roberto was electing to call the entire balance payable immediately.

In response, Stella filed a counterclaim against Roberto and Jennie seeking damages for intentional infliction of emotional distress, malicious abuse of process, and prima facie tort. Stella alleged that Roberto had control over the finances of the company until February 2006, and that she therefore did not have sufficient information to admit or deny the allegation that she was in default. In August 2006, the property was sold, and the district court dismissed Roberto and Jennie's foreclosure claim following their receipt of the balance due on the note. This left only Stella's counterclaims to be litigated.

Prior to trial, the district court concluded that the March 2006 settlement precluded Stella from relitigating any claims that she could have brought in her prior lawsuit against Roberto, apparently on the basis of res judicata or collateral estoppel. The court entered an order barring the consideration of Roberto's conduct prior to the settlement for purposes of awarding compensatory damages but allowing that conduct to be admissible for purposes of establishing punitive damages and determining whether Roberto's conduct was wilful, wanton, reckless and intentional. Following the trial, the district court awarded Stella $40,000 in compensatory and $100,000 in punitive damages on her claim for intentional infliction of emotional distress and $53,300 in compensatory and $100,000 in punitive damages on her claim for malicious abuse of process. The court concluded that double recovery was not appropriate and therefore awarded Stella a total judgment of $153,300. Roberto and Jennie appeal the judgment against them, arguing that the district court's judgment is not supported by substantial evidence because Stella failed to prove the elements of both intentional infliction of emotional distress and malicious abuse of process.

**DISCUSSION**

When reviewing a case for sufficiency of the evidence, we "resolve[] all disputes of facts in favor of the successful party and indulge[] all reasonable

6

inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (filed 1996). In doing so, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In reviewing the court's judgment, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

**Intentional Infliction of Emotional Distress**

Roberto and Jennie first argue that the district court erred in concluding that Stella established all elements of her intentional infliction of emotional distress claim. In order to prevail on such a claim, Stella was required to prove that "(1) the conduct in question was extreme and outrageous[,] (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff[,] (3) the plaintiff's mental distress was extreme and severe[,] and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607,

7

41 P.3d 333 (filed 2001) (internal quotation marks and citation omitted). "[T]he failure of any one of the elements will defeat the claim." *Id.* ¶ 27.

As an initial matter, Roberto and Jennie argue that the district court erroneously considered evidence that it had previously ruled it would not consider for purposes of compensatory damages. The district court ruled that because of the global settlement between the parties, Stella would not be awarded compensatory damages related to alleged conduct of Roberto committed before March 2, 2006, the date of the settlement, but that "[a]ll conduct may be admissible as to the issue of punitive damages and whether the alleged conduct of Roberto . . . was wilful, wanton, reckless and intentional."

Despite this ruling, the court's determination that Stella established the elements of intentional infliction of emotional distress relied on conduct that occurred prior to the March 2006 settlement. For example, the court found that "Stella . . . suffered physical and emotional pain when she received the Notice of Default in December . . . 2005" and that she was "shocked and began to suffer anxiety attacks, believing . . . she was going to lose everything" when she received that letter. In addition, the court concluded that Stella experienced severe emotional distress as a result of Roberto's "filing false statements in pleadings" and that "Stella . . . endured the extreme stress caused by worrying if the [c]ourt

8

would be able to discern the truth, that she did own Cordova Printing." Putting aside for the moment the "filing false claims" conclusion, the issue of who owned Cordova Printing was explicitly resolved in the March 2006 settlement. Thus, based on the district court's ruling that it would not consider Roberto's conduct prior to the March 2006 settlement for purposes of determining compensatory damages, the court should have not considered the effect the December 2005 letter had on Stella or the fact that she was concerned that the court would not be able to determine who actually owned the building. Both the letter and the assertion that Roberto owned the business occurred prior to the March 2006 settlement. We therefore limit our consideration of whether sufficient evidence supports the judgment against Roberto and Jennie to evidence of Roberto's post-settlement conduct and disregard the court's findings regarding the effect that Roberto's pre-settlement conduct had on Stella.

Roberto and Jennie argue that the only finding the court made regarding post-settlement conduct was that Roberto and Jennie's foreclosure suit falsely stated that Stella was in default when Stella was not in fact in default on her loan. The court concluded that Stella's "emotional and physical suffering," which began when she received the notice of default letter in December, "was exacerbated when she was served in March 2006 with the foreclosure action" and that "[s]he suffered

from insomnia, impaired ability to work, and impaired ability to parent her children" and significant weight loss.

Stella contends that in addition to the false statements Roberto and Jennie made in their pleadings, Roberto also engaged in extreme and outrageous conduct when he violated a court order requiring him to sign a release of the mortgage so that Stella could sell the property. However, the court's findings that Stella suffered severe emotional distress do not mention this alleged violation of a court order in connection with Stella's claim. Instead, the findings related to post-settlement conduct focused only on the allegedly false statement of default made in the foreclosure suit. Thus, there is no causal connection between the alleged violation of the order and the distress the court found that Stella endured. *See Baldonado v. El Paso Natural Gas Co.*, 2008-NMSC-005, ¶ 27, 143 N.M. 288, 176 P.3d 277 (filed 2007) (explaining that there must be a causal connection between a defendant's conduct and the plaintiff's distress). We therefore agree with Roberto and Jennie that the only finding the court made to support the extreme and outrageous conduct element of Stella's claim for intentional infliction of emotional distress is that Roberto and Jennie falsely stated in their complaint for foreclosure that Stella was in default.

Roberto and Jennie argue that substantial evidence does not support the court's findings that Stella was not in default at the time the complaint was filed. They contend that there was undisputed evidence at trial that Stella did not make the March 1, 2006, payment due under the note, and that she was therefore in default at the time the complaint was filed on March 15, 2006. In addition, Roberto and Jennie contend that Stella was also in default by virtue of failing to make a payment of the total amount due on the note after Roberto called the note in December 2005. Because the statement in the foreclosure complaint was true, Roberto and Jennie argue, Stella failed to prove that they engaged in extreme and outrageous behavior, an essential element of her intentional infliction of emotional distress claim.

Stella appears to contend that Roberto and Jennie failed to preserve this argument because their attorney argued during closing that Stella was not in default at the time the foreclosure action was filed. Contrary to Stella's argument, Roberto and Jennie's proposed findings of fact and conclusions of law specifically sought a finding from the court that "Stella was . . . in default [by] failing to pay the monthly payment due under [t]he Note on March 1, 200[6]" and that she was in default due to her failure "to pay all amounts due and payable" after Roberto called the note in December 2005. Thus, Roberto and Jennie adequately apprised the

11

court of their argument that the default occurred when Stella missed the March payment, and they have preserved the argument for appeal. *See Gonzales v. Lopez*, 2002-NMCA-086, ¶ 16, 132 N.M. 558, 52 P.3d 418 (noting that submitting an issue in proposed findings of fact and conclusions of law sufficiently preserves the issue for appeal). We thus turn to the merits of their contention.

The district court found that "[t]he allegation made by Roberto . . . in the Complaint for Debt and Money Due and [f]or Foreclosure, that Stella . . . was in default, was a false statement" because when the lawsuit was filed "the Note was not delinquent or in default; it was current." Aside from this finding, all of the court's findings regarding the falsity of the contention that Stella was in default focus on the letter Roberto sent to Stella in December, prior to the settlement, not on whether Stella was in default at the time the lawsuit was filed in March. Roberto and Jennie do not dispute that Stella was not in default when Roberto sent her the letter in December. Instead, they contend that Stella was in default at the time they filed the foreclosure action and that the allegations in the lawsuit were therefore true and cannot form the basis of Stella's claim for intentional infliction of emotional distress.

While there was a substantial amount of evidence that Stella was not in default when Roberto sent her the notice of default letter in December, there was

12

no evidence presented to contradict the assertion that Stella missed the March 1st payment and was thus in default at the time Roberto and Jennie filed the lawsuit in March. Stella, whom the district court found to be credible, testified that she did not make the March payment despite having collected rent from the other tenants in the building. Roberto testified that after he was barred from the premises in February 2006, Stella never made a payment on the note. Thus, the testimony of both Stella and Roberto establishes that there is no dispute that the March 2006 payment was not made.[1]

The provisions of the note state that the monthly installments are "due and payable on the 1st day of each and every month." The note further provides that "in case of default of the payment of any of said installments, when, by the terms hereof, the same shall fall due, that such installments shall bear interest from the date of their respective maturities until paid" and that "if any one of said installments . . . is not paid within ten (10) days after the same becomes due and payable, the whole of the principal sum then remaining unpaid . . . shall forthwith become due and payable without notice or demand, at the option of the holder of [the] note." While the note does not specifically define default, "default" is

---

[1]While Roberto also testified that Stella was not in default at the time he filed the complaint, this testimony does not alter the fact that neither party disputes that the March 2006 payment was never made or the implications of missing that payment under the terms of the note.

13

generally defined as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." Black's Law Dictionary 449 (8th ed. 2004). Given that the entire balance could become payable on demand if, following default, the installment was not paid within ten days of its due date, the note clearly contemplated that a default occurs if the monthly payment is not made on the day that it is due. Because Stella undisputedly failed to pay the March 1, 2006, payment, she was, under the terms of the note and the common definition of the term, in default. Thus, when Roberto filed the foreclosure action on March 14, four days after the ten-day grace period expired, Roberto was acting within his right to obtain the full balance of the note following Stella's failure to make a payment.

In addition to the fact that Stella was in default for having failed to make the March 2006 payment, Stella was also in default by virtue of having failed to make a payment for the entire balance due on the note after Roberto called the note in December 2006. The district court concluded that Roberto did not call the note because the letter he sent to Stella was titled as a notice of default and contained language indicating that Stella had defaulted on the loan when in fact she had not missed a single payment. Specifically, the letter stated that "[t]his letter is written as a formal notice of Stella Cordova's default under [the note]. Pursuant to the

14

terms of the [n]ote, Roberto Cordova hereby elects to call all amounts due thereunder immediately payable in full." The note provided that "Payees, at their sole discretion shall have the right to call this [n]ote due and payable in full at any time upon providing thirty (30) days prior written notice to Makers of any such call." The note does not impose any other requirements to call the note, it does not specify any language that must be used to call the note, and it does not require that Stella be in default before the note can be called or that Stella receive a valid default notice prior to the calling of the note.

Stella argues that this letter was insufficient to call the note because "claiming Stella Cordova was in default when she was not is not sufficient to notify someone that the [n]ote is to be paid in 30 days." We disagree. The language of the note allowed Roberto to call the note at any time for any reason. The note did not require Roberto to use any specific language to call the note nor to provide any particular type of notice as long as notice was provided. The letter Roberto sent explicitly stated that he was calling the note pursuant to the terms of the note, which in effect provided Stella with thirty days' notice that the entire balance of the note was payable in full. Stella does not dispute that she did not tender payment in full. Thus, when Stella failed to make the payment after the expiration of the thirty-day period contemplated by the note, she defaulted on her

15

obligation to tender a full payment. Because of this default, Roberto and Jennie's allegation in the foreclosure action that Stella was in default was not a false statement.

The court made no other findings regarding Roberto's post-settlement conduct that could be characterized as "extreme and outrageous conduct" sufficient to support Stella's claim of intentional infliction of emotional distress. Thus, we must determine whether the act of filing a valid foreclosure suit is sufficient to meet the "extreme and outrageous conduct" requirement of an intentional infliction of emotional distress claim.

In *Trujillo*, our Supreme Court was asked to determine whether being fired rose to the level of conduct required to meet the extreme and outrageous conduct element of intentional infliction of emotional distress. 2002-NMSC-004, ¶ 27. The Court noted that "[b]eing fired is a common occurrence that rarely rises to the level of being 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'" *Id.* (citation omitted). Filing a foreclosure action after a debtor goes into default, like firing an employee whose performance is no longer satisfactory, is a common occurrence that does not rise to the level of being beyond all possible bounds of decency or utterly intolerable in a civilized community. *See* Restatement (Second) of Torts § 46 cmt. g (1965) (noting that an actor is never

liable for intentional infliction of emotional distress "where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress").

We therefore conclude that Stella failed to establish that Roberto and Jennie's conduct was extreme and outrageous, and we reverse the judgment of the district court awarding Stella compensatory and punitive damages for intentional infliction of emotional distress.

**Malicious Abuse of Process**

Roberto and Jennie next argue that the district court's finding that they are liable for malicious abuse of process is not supported by substantial evidence. While our review is deferential to the findings and conclusions of the trial court, we must also be mindful of our Supreme Court's caveat that "the tort of malicious abuse of process [should be construed] narrowly in order to protect the right of access to the courts" and that the tort is disfavored in the law. *DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶ 19, 124 N.M. 512, 953 P.2d 277 (filed 1997), *overruled on other grounds by Durham v. Guest*, 2009-NMSC-007, 145 N.M. 694, 204 P.3d 19. Our Supreme Court first articulated the tort of malicious abuse of process in *DeVaney* and delineated four elements that must be established in order for a party to prevail on a claim. Those elements are

> (1) the initiation of judicial proceedings against the plaintiff by the defendant[,] (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim[,] (3) a primary motive by the defendant in misusing the process to accomplish an illegitmate end[,] and (4) damages.

1998-NMSC-001, ¶ 17.  Recently, in *Durham*, 2009-NMSC-007, ¶ 29, the Court overruled *DeVaney* to the extent that it required the defendant to have initiated judicial proceedings against the defendant, but left the remaining elements of the tort in place.

Roberto and Jennie first argue that there was insufficient evidence to support an act in the use of process other than such as would be proper in the regular prosecution of a claim.  This element can be proved either by showing that a complaint was filed without probable cause or by the existence of an "irregularity or impropriety suggesting extortion, delay, or harassment."  *Durham*, 2009-NMSC-007, ¶ 29 (internal quotation marks and citation omitted); *see, e.g.*, *S. Farm Bureau Cas. Co. v. Hiner*, 2005-NMCA-104, ¶ 11, 138 N.M. 154, 117 P.3d 960 (noting that whether filing of complaint is an abuse of process depends on whether there was probable cause to file the complaint).

The district court concluded that Roberto's

> act of alleging in his Complaint for Debt and Money Due and [f]or Foreclosure that 'Defendant[] ha[s] defaulted in [her] obligations to Plaintiff under the note and mortgage due to [her] failure to make timely payment[s]' and that 'the note contains a provision which

18

> makes it payable in full on demand by Plaintiffs at their sole discretion upon 30 days notice,' paired with the attachment of the notice which is entitled 'Notice of Default' and states that Stella . . . is in default, when she was not in default, are actions in the use of process other than such as would be proper in the regular prosecution of the claim.

While the district court did not specify whether it was relying on the lack of probable cause or the procedural impropriety prong of the misuse of process element of the claim, it appears that the district court relied on the lack of probable cause element because the court's conclusion focused solely on the complaint, not on the use of process later in the proceedings.

Because of the fundamental importance of providing meaningful access to the courts and our concern with the chilling effect malicious abuse of process claims may have on valid complaints, the "lack of probable cause must be manifest." *DeVaney*, 1998-NMSC-001, ¶¶ 19, 22. For purposes of the tort, probable cause is defined "as the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury." *Id.* ¶ 22 (citation and footnote omitted). Thus, we must determine whether substantial evidence supports the district court's determination that Roberto and Jennie filed their complaint without probable cause.

The court's determination was based on its findings that Stella was not in default at the time the complaint was filed and that Roberto and Jennie knew Stella was not in default. We have already determined that these findings are not supported by substantial evidence, and that because Stella had missed the March 2006 payment, she was in fact in default. Because Stella was in default, we conclude that Roberto and Jennie had probable cause to file the foreclosure action against Stella.

Because Roberto and Jennie had probable cause to file the complaint, Stella failed to prove that Roberto engaged in a misuse of process, an essential element of the malicious abuse of process claim. We therefore reverse the judgment of the district court awarding Stella compensatory and punitive damages for malicious abuse of process.

**Punitive Damages**

Roberto and Jennie also argue that the district court erred by awarding punitive damages based on conduct that the court ruled was barred by res judicata and that the evidence the court could properly consider was insufficient to support a finding that Roberto's conduct rose to the level required for punitive damages to be awarded. In order for a party to have a claim for punitive damages, that party must first have "established a cause of action against the defendant." *Sanchez v.*

20

*Clayton*, 117 N.M. 761, 767, 877 P.2d 567, 573 (1994) (emphasis omitted). Because we have concluded that Stella failed to establish a cause of action for intentional infliction of emotional distress or malicious abuse of process, there is no basis on which punitive damages could be awarded for Roberto's conduct. We therefore need not address Roberto and Jennie's arguments regarding the propriety of the punitive damages award entered against them.

**CONCLUSION**

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to enter judgment in favor of Roberto and Jennie Cordova.   **IT IS SO ORDERED.**

**CYNTHIA A. FRY, Chief Judge**

21

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**ROBERT E. ROBLES, Judge**